William Edward CORTEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 58630.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 20, 1978.

State's Motion for Rehearing En Banc
Denied Oct. 11, 1978.

Albert A. Pena, III, Leo N. Duran, Corpus Christi, for appellant.

William B. Mobley, Jr., Dist. Atty. and Eric Brown, Asst. Dist. Atty., Corpus Christi, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A., Penal Code, Sec. 19.03(a)(2). The jury returned affirmative findings on each issue submitted under Art. 37.071(b), V.A.C.C.P., and, accordingly, the punishment was assessed at death.

The record reflects that during the noon hour on August 30, 1975, the appellant entered Sambo's Restaurant in Corpus Christi. He sat alone in a booth drinking a Coke he had ordered. Loretta Whitely, the wife of the deceased, testified that she noticed the appellant staring at her while she was working at the cash register. She told her husband, Garry Whitely, that the appellant was making her feel uncomfortable. Whitely went over to the appellant and spoke to him and then advised his wife that the appellant would be leaving shortly. Appellant left the booth, walked to the cash register, and pulled a gun. Loretta Whitely heard the appellant say, "This is a holdup. Give me the money." Garry Whitely opened the cash register and gave the appellant a stack of five dollar bills. According to Loretta Whitely, appellant then said, "I mean all of it." She then told her husband to give the appellant all of the money, which he did. Apparently as a result of Garry Whitely shifting his weight, the appellant said, "Don't come near me. I will shoot. If you don't believe me I will blow your head off." After stuffing the money into his shirt, appellant said, "Now I'm leaving. I'm going out of these doors, I don't want anybody to follow me." The appellant then backed out of the front door of the restaurant and fled. Garry Whitely

ordered his wife to call the police from the back office.

From the testimony of a number of witnesses, it appears that appellant fled from the restaurant, followed shortly thereafter by Garry Whitely, who caught him in an adjacent parking lot. It appears that Whitely pushed or tackled the appellant from behind, who then fell forward to the ground. Then, in the words of one of the witnesses, "They went into a wrestle." According to Kyle Scott, an eyewitness, "They wrestled for a few minutes; then . . . I heard the shots were fired and—well, several shots were fired, and then a few seconds later I noticed, well the defendant had—Garry Whitely had the defendant's arm in an arm hold, holding the gun out in the air, and I heard one shot discharge, the

last shot, and shortly after that—he [appellant] got up and Garry Whitely stayed down, then he [appellant] stood up and backed away from him . . .." The appellant then fled into a nearby Globe Department Store, where he was arrested shortly thereafter by the police.

The record further reflects that five shots had been fired, one grazing the deceased's chin and tip of his shoulder, another entering his chest, and a third entering below his armpit. The appellant also received a minor gunshot wound to two fingers.

Garry Whitely died at a nearby hospital shortly thereafter without ever regaining consciousness.

At trial, appellant's written confession was admitted into evidence after a *Jackson v. Denno*[1] hearing.[2]

1. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). See Art. 38.22, Sec. 6, V.A.C.C.P.

2. Appellant's confession, omitting the warnings and signatures, reads:

"My name is William Edward Cortez. I am 37 years old. I was born on April 1, 1937, in Unadilla, Georgia. I was working at Northwestern Metal in Lincoln, Nebraska. I was living in a trailer house on 2545 Cornhusker Highway in Lincoln, Nebraska. Two or three days ago I left Lincoln, Nebraska and hitchhiked to Dallas, Texas. I have several relatives around Dallas. I saw one of my sisters, Alva, while I was there. I don't know her last name, she just got married. While I was in Dallas I stayed on Elm Street at a 'Flop Joint'. On Friday, August 29, 1975, I left Dallas and hitchhiked to Corpus Christi. I caught a ride with a guy with a pickup and camper. He was by himself, but he had a dog with him. We got to Corpus Christi on the morning of August 30, 1975. He brought me to a camping area where there was a lot of water. After he let me off I caught another ride to some main street in Corpus Christi. I walked for awhile and saw a restaurant. I went inside and ordered a coke or pepsi. I sat down at a booth on the left side of the register. While I was drinking the drink, I saw a bug in the drink. I told the waitress, and then I told her that I wanted to see the manager. I told the manager that the drink had a bug in it and he told me that he didn't have any bugs in there. I can't remember whether he told me that I had to pay for the drink or not. He started to walk away from me, I told him to give me all of the money. I had a .22 cal. revolver in my belt and pulled it out. I bought the gun from a dude on the street in Dallas. I paid him $20.00 for it. I bought it the day before I left. The manager

went to the register to get the money. The place was crowded and I didn't think that there would be any hassle. He was acting 'jumpy' and didn't seem to want to give me the money. After he gave me the money I put it into my pocket and went out the front door. I still had the gun in my hand and started running toward a shopping center. While I was running, someone jumped me from behind and we both fell down on the ground. I don't know who it was but while we were wrestling around on the ground I started pulling the trigger on my gun which I still had in my hand. I don't know how many times I fired the gun. I know that the gun holds six rounds but I don't know whether I fired all of them or not. I broke loose from him and ran. I ran into the department store that was in the shopping center. When I got inside the store I saw that I was shot on two fingers of my left hand. I was looking for a place to get out of the back of the store and the law came into the store and arrested me. They brought me to the Police Station and booked me upstairs. They didn't put me in a cell they took me to the hospital to have my fingers treated. After they x-rayed my fingers they bandaged them and the police brought me back and put me in the cell. A little later I was taken to a court room and a judge warned me of my rights. Sgt. Boggess warned me of my rights again before I gave him this statement. He also told me that I was arrested for Capital Murder. I already knew that I had shot the guy that I was wrestling with and that he had died. I gave this statement to Sgt. Boggess of my own free will without any threats or promises being made to me in regard to it and this statement is true and correct to the best of my knowledge. End."

At the punishment phase of the trial, the State introduced evidence of a 1954 Florida conviction for larceny of an automobile (State's Exhibit Number 45), a 1956 Texas conviction for theft over $50.00 (State's Exhibit Number 46), a 1960 Florida conviction for larceny of an automobile (State's Exhibit Number 45), a 1961 Texas conviction for burglary (State's Exhibit Number 47), a 1966 Colorado conviction for assault with a deadly weapon (State's Exhibit Number 48), a 1970 Nebraska conviction for burglary (State's Exhibit Number 49). In addition, the State introduced evidence that the appellant had been paroled from the Nebraska Penitentiary on August 13, 1975, some 17 days prior to the instant offense.

Dr. Charles Kutnick, a psychiatrist, was called as a witness by the State. In response to a hypothetical question outlining the facts of the instant case, he was asked if he had an opinion "as to whether a person under those circumstances is a person who would commit acts of violence in the future; that would act as a continuing threat to society? This calls for a yes or no answer." The witness answered that he did have an opinion. His opinion was that a person described in the hypothetical situation would commit acts of violence in the future and would be a menace or continuing threat to society.

The appellant presented no evidence at either the guilt or punishment phases of the trial.

In ground of error number one, appellant contends that the trial court erred in admitting State's Exhibit Number 45 into evidence because the documents contained therein were not properly authenticated. State's Exhibit Number 45 is a "pen packet" from the state of Florida reflecting appellant's prior convictions in 1954 for larceny of an automobile and in 1960, again for larceny of an automobile.

At the time State's Exhibit Number 45 was offered into evidence, appellant objected on the ground that it was not properly authenticated. The objection was overruled. Contrary to the State's argument, we find the objection was sufficiently specific to call the court's attention to the basis of appellant's objection. See *Walls v. State*, 548 S.W.2d 38 (Tex.Cr.App.1977).

The certification on State's Exhibit Number 45, omitting the stationery letterhead, reads as follows:

"STATE OF FLORIDA )

COUNTY OF LEON )

I, LOUIE L. WAINWRIGHT, AS OFFICIAL CUSTODIAN OF ALL STATE PRISONERS AND THE RECORDS PERTAINING THERETO, DO HEREBY CERTIFY THE ATTACHED DOCUMENTS TO BE TRUE AND CORRECT COPIES OF THE INFORMATION OF INDICTMENT, SENTENCE OF THE COURT AND COMMITMENT TO STATE PRISON IN THE CASE OF THE STATE OF FLORIDA VS. WILLIAM EDWARD CORTEZ AS THE SAME APPEARS IN THE OFFICIAL RECORDS OF MY OFFICE.

GIVEN UNDER MY HAND AND SEAL, THIS THE 18th DAY OF JUNE A.D. 1976.

/s/ L. L. Wainwright
LOUIE L. WAINWRIGHT, SECRETARY
DEPARTMENT OF OFFENDER REHABILITATION"

This document is also embossed with the seal of the Florida Division of Corrections.

The admission of official written instruments in a case such as this is governed by Art. 3731a, V.A.C.S. See Art. 38.02, V.A.C.C.P. Article 3731a, Sec. 4, V.A.C.S., provides in pertinent part as follows:

"Such writings or electronic records may be evidenced by an official publication thereof or by a copy or electronic duplication attested by the officer having the legal custody of the record, or by his deputy. Except in the case of a copy of an official writing or an official electronic recording from a public office of this state or a subdivision thereof, the attestation shall be accompanied with a certificate that the attesting officer has the legal custody of such writing. If the office in which the record is kept is within the United States or within a territory or insular possession subject to the dominion of the United States, the certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of his office. . . . All such attested and certified instruments and the contents of the certificate

and the title of the person making the same, shall be evidence of the matters, statements, representations and title contained therein."

In *Hutchins v. Seifert*, 460 S.W.2d 955 (Tex.Civ.App.—Houston [14th Dist.], 1970, n. r. e.), the Court of Civil Appeals stated that without proper authentication under Art. 3731a, Sec. 4, V.A.C.S., an out-of-state judgment was inadmissible hearsay. See also *Axton v. Kirby*, 552 S.W.2d 620 (Tex. Civ.App.—Houston [14th Dist.], 1977, no writ). In *Speights v. State*, 499 S.W.2d 119 (Tex.Cr.App.1973), this Court held that where records were attested to by the clerk of the court within this state, no further certification was required by Art. 3731a, Sec. 4, V.A.C.S., and that the records were admissible. Accord, *Alvarez v. State*, 536 S.W.2d 357 (Tex.Cr.App.1976), cert. denied, 429 U.S. 924, 97 S.Ct. 325, 50 L.Ed.2d 292 (1977). In *Kanaziz v. State*, 382 S.W.2d 485 (Tex.Cr.App.1964), a Michigan pen packet was certified by the supervisor of records of the state's prison of Southern Michigan. The judge of the circuit court of Jackson County, Michigan, where the prison and its records were located, certified as to the identity of the supervisor of records and the clerk of the circuit court of Jackson County, Michigan, certified as to the identity of the judge. This Court held that strict compliance with Art. 3731a, V.A.C.S., had been shown. See also *Phillips v. State*, 538 S.W.2d 116 (Tex.Cr.App.1976).

Although Art. 3731a, Sec. 4, states that "the certificate *may* be made by a judge of a court of record . . . authenticated by the seal of his office," it is by no means mandatory that the certificate be made by the judge. In *Aaron v. State*, 546 S.W.2d 277 (Tex.Cr.App.1976), this Court stated:

"[T]he Louisiana Secretary of State certified to the identity of the warden and the records clerk of the Louisiana State Penitentiary. The records clerk certified that he was the legal custodian of the records and the copies admitted at trial were true and exact copies. We find that the pen packet was properly certified for admission as evidence."

Similarly, in *Easter v. State*, 536 S.W.2d 223 (Tex.Cr.App.1976), this Court held that an Arkansas pen packet attested to by the superintendent of the Arkansas Department of Corrections and accompanied by a certificate from the Secretary of State of Arkansas certifying that the named person was the superintendent of the Department of Corrections and had legal custody of the records, which certificate bore the state seal of Arkansas, was properly admissible under the provisions of Article 3731a, Sec. 4, V.A. C.S. See also *Gibbs v. State*, 544 S.W.2d 403 (Tex.Cr.App.1976).

In *Garner v. State*, 552 S.W.2d 809 (Tex. Cr.App.1977), this Court held that the provision of Art. 3731a, Sec. 4, V.A.C.S., requiring certification that the attesting officer has legal custody of the official writing sought to be introduced is mandatory.

In *Morgan v. State*, 532 S.W.2d 85 (Tex. Cr.App.1976), an Ohio pen packet was accompanied by the following certificate:

"I, Robert L. Baker, swear that the enclosed copies are of the originalls (sic) received by me and that they are the true and accurate and certified.

/s/ Robert L. Baker
Robert L. Baker, Supervisor
Records Department"

This certificate was sworn to before a notary public in Warren County, Ohio. In reversing the conviction, this Court stated:

"There is nothing in the record to indicate that Mr. Baker is an employee of the prison system of Ohio. The record does not contain a certificate from a judge in the county where the prison is located or from the clerk of a court in that county. There is nothing to indicate that the papers were received from the legal custodian of the records in Ohio."

The court also noted, "We find the Ohio papers . . . were improperly considered by the jury in assessing appellant's punishment." The conviction was reversed.

In the instant case, there is no certificate by a judge of a court of record in which the record is kept certifying the attesting officer has legal custody of the asserted writings. See *Kanaziz v. State*, supra; *Garner*

**312**

*v. State,* supra; *Morgan v. State,* supra. Nor is there a certificate from the Secretary of State of Florida or any other appropriate officials certifying as to Louie Wainwright's position and to the fact that he has custody of the documents as asserted in his certificate. See *Easter v. State,* supra; *Aaron v. State,* supra; *Gibbs v. State,* supra. It is clear, therefore, that the trial court erred in admitting State's Exhibit Number 45 into evidence.

The State argues that the admission of the 1954 and 1960 Florida convictions is, under the facts of this case, harmless error. We cannot agree. Although the evidence in this case shows that the murder was committed while in the course of committing robbery, the facts should be contrasted with the violent and calculated acts of the defendants in *Granviel v. State,* 552 S.W.2d 107 (Tex.Cr.App.1977), cert. denied 431 U.S. 923, 97 S.Ct. 2642, 53 L.Ed.2d 250; *Burns v. State,* 556 S.W.2d 270 (Tex.Cr.App.1977), cert. denied 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294; and *Felder v. State,* 564 S.W.2d 776 (Tex.Cr.App.1978). The evidence at the punishment phase of the trial consisted of proof of six prior convictions, only one of which (Colorado, assault with a deadly weapon) appears to involve a crime of violence, and the testimony of a psychiatrist. As a result of our finding that State's Exhibit 45 was improperly admitted, two of appellant's six prior convictions should not have been considered by the jury. Considering the facts of the primary offense and the nature of appellant's prior record, we cannot say that the erroneous admission of two prior convictions could not have affected the jury in their answers to the special issues submitted to them under Art. 37.071(a), V.A.C.C.P.

The judgment is reversed and the cause remanded.

DOUGLAS, DALLY and W. C. DAVIS, JJ., dissent.