Charles RUMBAUGH, Appellant,

v.

The STATE of Texas, Appellee.

No. 59940.

Court of Criminal Appeals of Texas,
En Banc.

June 20, 1979.

Rehearing Denied Nov. 28, 1979.

James D. Durham, Jr., Amarillo, court appointed on appeal, for appellant.

Thomas A. Curtis, Dist. Atty., John Byron Reese and Steve Schiwetz, Asst. Dist. Attys., Amarillo, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

After he had been arrested on a charge of capital murder, the appellant escaped from the Potter County jail. He and two other inmates who escaped were arrested for a traffic violation in Scurry County. As they were being taken into the Scurry County Courthouse, the three arrestees assaulted the arresting officer and took his gun, but they were recaptured immediately. After they were taken before a magistrate (see Article 15.17, V.A.C.C.P.), they were confined in the Scurry County sheriff's office. The arrestees did not know that their conversations were being recorded on tape as they talked among themselves and with other persons in the office.

At the punishment phase of the appellant's trial for capital murder, and over the appellant's objection, the trial court received in evidence portions of the long tape recording. These portions included the appellant's statement to the arresting officer,

"If I'd a-had a gun I sure as hell would have shot you, man"; his statement to the arresting officer explaining his plan to "jump" the officer with a knife; his statement to his companion, complaining about not being given the officer's gun so that he could have staged a "showdown"; his statement to officers that he doubted that he would ever sit in the electric chair, and his description of the capital murder.[1] These damaging and inculpatory statements were offered on the issues stated in Article 37.-071(b), V.A.C.C.P. After hearing these statements and other evidence, the jury answered the issues "yes," which fixed the punishment at death.

In his twelfth ground of error, the appellant contends that the court erred in admitting into evidence one of the statements on the tape ("If I'd a-had a gun I sure as hell would have shot you, man."), because it was not admissible under Article 38.22, V.A.C.C.P. The appellant does not explain why he mentions only that statement, for his objection applies with equal (or greater) force to the later statements on the tape. At trial the appellant objected on the same ground to all the statements. The error complained of embraces all the statements.

The trial court overruled the objection on the ground that he was bound to reject only evidence that was "in violation of" the constitutions of the United States or Texas. Similarly, the State argues on appeal that the tape, although inadmissible at the guilt stage of the trial, was admissible at the punishment stage "because no constitutional rights were violated." The ruling and the argument are based on the two sentences of Article 37.071(a), V.A.C.C.P. that are emphasized:

"Upon a finding that the defendant is guilty of a capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to death or life imprison-

---

1. "Q [Evidently by a deputy sheriff]: Who'd you kill?

"A [By the appellant]: A jewelry store owner.

"Q He pull a gun on you?

"A Yeah. He wasn't fast enough. He wasn't fast enough. I shot him. Well, first I strug—you know, knocked him down a couple times, put it up to his head and shot. But somehow it miraculously missed him, man, not through no fault of my own. I think he moved. Same time as I shot him in the chest. He didn't move any more."

ment. The proceeding shall be conducted in the trial court before the trial jury as soon as practicable. *In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Texas.* The state and the defendant or his counsel shall be permitted to present argument for or against sentence of death."

Although the first of these emphasized sentences gives the trial court wide discretion in determining the relevance of facts sought to be proved in the proceeding, the sentences do not abolish the rules of evidence. *Porter v. State,* 578 S.W.2d 742, 748 (Tex.Cr.App.1979).

That the Legislature deliberately chose not to abolish the exclusionary rules of evidence is shown by considering the legislative history of Article 37.071(a). The revision of Texas's law on capital crimes began with House Bill 200 in the 63rd Legislature. Not much of that bill (and nothing relevant to this case) survived.[2] After the bill passed the House, the Jurisprudence Committee of the Senate recommended an amended version which substituted an entirely different bill.[3] The procedural aspects of this bill were virtually identical[4] to those of the Florida Capital Punishment Act,[5] which had been enacted only a few months before.[6] The pertinent portion of the Senate bill[7] read:

"Article 37.071. PROCEDURE IN CAPITAL CASE.

(a) Upon a finding that the defendant is guilty of a capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment. The proceeding shall be conducted in the trial court before the trial jury, unless waived, as soon as practicable. If the trial jury has been waived or if the defendant pleaded guilty, the sentencing proceeding shall be conducted before a jury empaneled for that purpose unless waived by the defendant. In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in Subsections (e) and (f) of this section. *Any evidence that the court deems to have probative value may be admitted, regardless of its admissibility under the exclusionary rules of evidence, but the defendant shall be accorded a fair opportunity to rebut any hearsay statements.* This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Texas. The state and the defendant or his counsel shall be permitted to present argument for or against sentence of death. [Emphasis supplied]"

It will be noted that in this bill, between the two sentences on which the State relies, there was another sentence which would have abolished the exclusionary rules of evidence in the punishment phase of a capital trial. After the bill passed the Senate, the House refused to concur in the amendments, and the bill was referred to a conference committee.[8] In the process of resolv-

---

**2.** See "Comment, House Bill 200," 11 Hous.L. Rev. 410 (1974).

**3.** "Transcript of Debate on H.B. 200, May 23, 1973," page 7 (Remarks of Senator Ogg). The document is in the Texas Legislative Reference Library file on H.B. 200.

**4.** "[I]t is basically like the Florida law." *Id.* at 3.

**5.** 1972 Florida Laws, chapter 72–724; codified as Fla.Stat.Ann., Section 921.141 (West Supp. 1979). The Florida act, in turn, is very much

like Section 210.6 of the Model Penal Code (Proposed Official Draft 1962).

**6.** See Ehrhardt & Levinson, "Florida's Legislative Response to *Furman,*" 64 J.Crim.L. & C. 10 (1974).

**7.** The bill is in the Texas Legislative Reference Library file on H.B. 200.

**8.** "Comment, House Bill 200," supra note 2, at 418 (citing House and Senate Journals).

ing the differences between the bills, the conference committee made many modifications.[9] The conference committee's bill was approved by overwhelming majorities of both houses and was signed into law,[10] so the actions of the conference committee express the Legislature's intent.

The conference committee made several changes in Article 37.071(a). First, it removed references to waiver of jury trial, because it decided that no waiver would be permitted.[11] Second, it removed references to aggravating and mitigating circumstances, because it substantially rejected that concept.[12] Third, and most significantly for our purposes, it deleted the sentence that would have abolished the exclusionary rules of evidence in the punishment phase of a capital trial. This can only mean that the Legislature deliberately chose not to abolish those rules. The legislative intent is clear.

Additionally, an examination of the context in which arose the two sentences [13] on which the State relies will show that these sentences were not intended to abolish all but the constitutionally mandated rules of evidence.

The first of these sentences was the result of a disagreement in Florida over the scope of the punishment hearing. The governor of that state proposed a bill which would have limited the evidence to matters that were relevant to the enumerated aggravating and mitigating circumstances. The Florida Legislature amended the bill to expand the scope of relevance to any evidence that was relevant to sentencing, in addition to the enumerated circumstances.[14] Thus, it may be seen that the effect of this sentence is to expand the trial court's discretion as to relevance, but it does not alter

other aspects of the law of evidence. We so held in *Porter v. State*, 578 S.W.2d 742, 748 (Tex.Cr.App.1979).

The other sentence on which the State relies is the one that deals with "evidence secured in violation of the Constitution." The Florida Legislature added that sentence in an evident abundance of caution, so that no one could be misled by the preceding sentence (which abolished "the exclusionary rules of evidence") into thinking that the exclusionary rule of the Fourth Amendment had been affected.[15] Most (if not all) of the significance of this sentence disappeared when the Texas Legislature omitted the sentence that abolished the exclusionary rules of evidence. Thus it may be seen that this sentence was intended only as a caution, not as an abolition of all the nonconstitutional rules of evidence.

Neither of these sentences on which the State relies purports on its face to change any rule of evidence other than the scope of relevance. The history of their origins demonstrates that there was no intent that they make any additional changes in the law of evidence. When we consider the additional fact of the Legislature's deliberate omission of the sentence that would have abolished the exclusionary rules of evidence, we are compelled to hold that the exclusionary rules of evidence do apply at the punishment phase of a capital trial.

This holding is consonant with our earlier holdings that the rule of evidence that excludes hearsay is applicable in the punishment phase of a capital trial. See *Porter v. State*, 578 S.W.2d 742 (Tex.Cr.App.1979); *Cortez v. State*, 571 S.W.2d 308 (Tex.Cr. App.1978).

---

9. *Id.* at 418–420 (Table 1).

10. *Id.* at 420.

11. *Id.* at 419 (Table 1, no. 7); see Article 1.14, V.A.C.C.P. (1973 Texas Acts, Chapter 426, Article 3, Section 5).

12. "Comment, House Bill 200," supra note 2, at 419 (Table 1, no. 8); see Article 37.071(b), V.A. C.C.P.

13. "In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Texas." V.A.C.C.P., Article 37.071(a).

14. Ehrhardt & Levinson, supra note 6, at 16 n. 63.

15. *Id.* at 14–16, especially at n. 46.

There is no conflict between today's holding and our earlier holdings that evidence of unadjudicated, extraneous offenses is admissible at the punishment phase of a capital trial. See *Garcia v. State*, 581 S.W.2d 168 (Tex.Cr.App.1979); *Wilder v. State*, 583 S.W.2d 349 (Tex.Cr.App.1979); *Hammett v. State*, 578 S.W.2d 699, 709 (Tex.Cr.App. 1979). In each opinion we have said, "Nothing in Article 37.071 requires that there be a final conviction for an extraneous offense to be admissible at the punishment phase of the [capital] trial." The statement implies a comparison with Article 37.07, Section 3(a), V.A.C.C.P.,[16] which, in the punishment phase of a non-capital trial, does limit proof of a defendant's prior criminal record to final convictions and other adjudicated offenses. The significance of the comparison is this: In a non-bifurcated trial, in which the issues of guilt and punishment are litigated at the same time, there is a rule of evidence that excludes proof of extraneous offenses because it confuses and prejudices the issue of guilt. J. Wigmore, Evidence, Section 55 (3rd ed. 1940). The purpose of a bifurcated procedure is to eliminate the need for this exclusionary rule of evidence. *Garcia v. State*, 581 S.W.2d 168 (Tex.Cr.App.1979); American Law Institute, Model Penal Code 74–75 (Tentative Draft No. 9, 1959). The very choice by the Legislature to establish a bifurcated procedure in capital cases, like the one in non-capital cases, evinces its intention to eliminate the rule of evidence that excludes proof of extraneous offenses. Had it wanted to limit the proof in capital trials to adjudicated offenses, it could have provided so in Article 37.071, as it has in Article 37.07. There being nothing in Article 37.071 to require such a limitation, this Court cannot impose it. The net result is that, by choosing a bifurcated procedure, the Legislature abolished the rule of evidence that excludes proof of extraneous offenses; by deliberately choosing not to abolish the other exclusionary rules of evidence, the Legislature has kept them in effect at the punishment phase of a capital trial.

■ The statutory rule of evidence that excludes proof of an oral confession by a person in custody has existed in Texas since 1907. The history of the rule is summarized in *Butler v. State*, 493 S.W.2d 190 (Tex.Cr.App.1973),[17] and is brought up to date in Bubany, "The Texas Confession Statute," 10 Texas Tech.L.Rev. 67 (1978). Since 1965, the rule has been codified as Article 38.22, V.A.C.C.P. There were a few exceptions in the statute that was in effect[18] when the appellant made his oral

**16.** "Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged." Article 37.-07, Section 3(a), V.A.C.C.P.

**17.** The issue that divided the court in *Butler* (whether the rule applied to mere statements that were not "confessions") is not present in this case, for at least two of the statements were confessions to crimes: the appellant's explanation of his plan to jump the officer and his description of the capital murder.

**18.** The appellant's statements were made on December 8, 1975. In effect at that time was 1967 Texas Acts, Chapter 659, Section 23. That earlier version of Article 38.22 provided in part:

"1. The oral or written confession of a defendant made while the defendant was in jail or other place of confinement or in the custody of an officer shall be admissible if:

"(a) it be shown to the voluntary statement of the accused taken in the presence of an examining court in accordance with law; or

"\* \* \*

"(e) It be made orally and the defendant makes a statement of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed.

"(f) Nothing contained herein shall preclude the admissibility of any statement made by the defendant in open court at his trial or at his examining trial in compliance with Articles 16.03 and 16.04 or of any statement that is the res gestae of the arrest or of the offense."

confessions, but none of the exceptions applies here.

In 1977, four years after the capital punishment statutes[19] were enacted, the Legislature amended Article 38.22, V.A.C.C.P. to make admissible an electronic recording of an oral statement made as a result of custodial interrogation, but only for impeachment and only when (among other things) the accused is told that a recording is being made.[20] Even if this relaxation of the rule applied to this case,[21] the trial court's ruling would have been an error, for the statements were used as direct evidence and the appellant was not told that a recording was being made. We should not be misunderstood as implying that the 1977 amendments apply. The point is to demonstrate the continuing strength of the Legislature's policy against the admission into direct evidence of oral confessions made informally. We note that, with two exceptions,[22] all types of admissible oral and written confessions require some formalities in their making: written and signed statements that show on their face that they were made after statutory warnings were given, statements made at an examining trial, and (now) electronically recorded statements that were made in the presence of two witnesses after warnings were given (including a warning that the recording was being made). Article 38.22, V.A.C.C.P. Perhaps these requirements of formalities are designed to guard against the danger that casually made oral statements are "so liable to be misunderstood." See *Pierson v. State*, 145 Tex.Cr. 388, 168 S.W.2d 256, 259 (1943). Especially might this danger be great if an accused, who did not know his words were being recorded, were engaged in boasting and in making himself out to be a fearsome desperado in the eyes of his companions and in the face of peace officers. Anyone who listened to the entirety

of this recording would conclude that the 18-year-old appellant was doing just that.

However this may be, the wisdom of this legislative policy is not a matter for this Court. *Butler v. State*, 493 S.W.2d 190, 198 (Tex.Cr.App.1973). It is for us to hold that the statutory rule of evidence that excludes oral confessions made in custody does apply to the punishment phase of a capital trial, that the trial court erred in admitting evidence of the oral confessions, and that the recording may not be used at any retrial.

The judgment is reversed and the cause is remanded.

DALLY, J., concurs in the results.

DOUGLAS, ODOM, TOM G. DAVIS and W. C. DAVIS, JJ., dissent.

---

**19.** 1973 Texas Acts, Chapter 426.

**20.** 1977 Texas Acts, Chapter 348, Section 2.

**21.** "This Act applies only to statements made on or after its effective date [August 29, 1977]." 1977 Texas Acts, Chapter 348, Section 3.

**22.** The exceptions are res gestae statements and statements that are found to be true and to conduce to establish guilt through the finding of physical evidence. The theory is that these types of informal statements are verified by external circumstances.