PD-0478-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/17/2015 11:57:18 AM
Accepted 6/17/2015 1:25:24 PM
ABEL ACOSTA
CLERK

PD-0478-15

# IN THE TEXAS COURT OF CRIMINAL APPEALS
## AT AUSTIN

## NO. 14-13-00518-CR
In the Court of Appeals for the Fourteenth District of Texas
at Houston

## NO. 1714161
In the County Criminal Court at Law Number 2
of Harris County, Texas

## LISA ANN BARFIELD
*Petitioner*

## V.

## THE STATE OF TEXAS
*Respondent*

## PETITION FOR DISCRETIONARY REVIEW

BRITTANY CARROLL LACAYO
Texas Bar No. 24067105
212 Stratford St.
Houston, Texas 77006
Telephone: (713) 504-0506
Facsimile: (832) 442-5033
Email: Brittany@bcllawfirm.com

ATTORNEY FOR PETITIONER

## ORAL ARGUMENT REQUESTED

## TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

Comes now petitioner, Lisa Ann Barfield, by and through his undersigned counsel, and presents this Petition for Discretionary Review pursuant to TEX. R. APP. P. § 5.

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

A complete list of the names of all interested parties is provided below so that the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case.

*Petitioner or Criminal Defendant:*

**Lisa Ann Barfield**

*Counsel for Petitioner:*

**Brittany Carroll Lacayo**
*Counsel for Petition for Discretionary Review*
212 Stratford St.
Houston, Texas 77006
(713) 504-0506
(832) 442-5033

**Charles F. Baird**
*Counsel on Appeal*
State Bar No. 00000045
Baird Farrelly, PLLC
2312 Western Trails Blvd, Ste. 102-A
Austin, Texas 78745-1677
Telephone: (512) 804-5911
Facsimile: (512) 804-5919

Email: jcfbaird@gmail.com

**E. Chevo Pastono**
*Counsel on Appeal*
State Bar No. 24037240
The Pastrono Law Firm, P.C.
202 Travis, Ste. 307
Houston, Texas 77002
Telephone: (713) 222-1100
Facsimile: (832) 218-7114
Email: chevo@pastronolaw.com

**Mark Thiessen**
*Counsel at Trial*
1221 Studewood Street
Houston, Texas 77008
Telephone: (713) 864-9000
Facsimile: (713) 864-9006

<u>Counsel for the State:</u>

**Devon Anderson**
Harris County District Attorney
**Jamie Morrison**
Assistant District Attorney – Trial
**James Reed**
Assistant District Attorney – Trial
**Dan McCrory**
Assistant District Attorney – Appeal
Harris County District Attorney's Office
1201 Franklin Street, Ste. 600
Houston, Texas 77002
Telephone: (713) 755-5826
Facsimile: (713) 755-5809

<u>Trial Judge:</u>

**Hon. Bill Harmon**
Harris County Criminal Court at Law No. 2
1201 Franklin St.
Houston, Texas 77002

# TABLE OF CONTENTS

IDENTITY OF JUDGE, PARTIES, AND COUNSEL.............................................ii

TABLE OF CONTENTS ...................................................................................iv

INDEX OF AUTHORITIES .............................................................................vi

STATEMENT REGARDING ORAL ARGUMENT ........................................viii

STATEMENT OF THE CASE .........................................................................viii

STATEMENT OF PROCEDURAL HISTORY ...............................................viii

QUESTIONS PRESENTED FOR REVIEW ......................................................1

ARGUMENT AND AUTHORITIES.................................................................2

PETITIONER'S FIRST QUESTION PRESENTED FOR REVIEW ...................2

> Is it an abuse of discretion for a trial court to deny a motion for continuance where trial counsel was without the normal use of his physical and mental faculties after suffering a recent head injury and petitioner was prejudiced by counsel's ineffective assistance at trial. (C.R. at 174-77)(2 R.R. at 4-5, 124)(3 R.R. at 46-47)(6 R.R. at State's Exhibit 1).

PETITIONER'S SECOND QUESTION PRESENTED FOR REVIEW ................1

> Does a defendant have to show that the jury actually saw an exhibit admitted into evidence containing a previous DWI conviction and other unadjudicated offenses to demonstrate that she was prejudiced by trial counsel's ineffective assistance for failing to object when it was offered? (3 R.R. at 36-37)(4 R.R. at 164-68)(6 R.R. at Exhibit 1).

PETITIONER'S THIRD QUESTION PRESENTED FOR REVEIW ...................8

> Would the trial court have erred in overruling an objection to a reference to petitioner's first trial? (3 R.R. at 46-47).

PETITIONER'S FOURTH QUESTION PRESENTED FOR REVEIW ................ 9

Is it fundamental error for the trial court to display a MADD plaque behind the judge's chair, clearly visible to the jury during a DWI trial? (2 R.R. at 5).

PETITIONER'S FIFTH QUESTION PRESENTED FOR REVEIW ................... 11

Did the Court of Appeals err in holding that that the trial court was not impartial? (2 R.R. at 5, 6-7, 116-24)(3 R.R. at 33-34, 45, 46, 90)(4 R.R. at 17-18, 34-36, 46, 49-51, 54, 73, 143, 145, 166).

PETITIONER'S SIXTH QUESTION PRESENTED FOR REVEIW ................... 15

Did the Court of Appeals err in holding that that the trial court's error in defining reasonable doubt in the jury charge did not cause actual harm to appellant's rights? (4 R.R. at 143)(C.R. at 187).

PETITIONER'S SEVENTH QUESTION PRESENTED FOR REVEIW ............ 17

Is error in defining reasonable doubt in the jury charge structural error? (2 R.R. at 22, 34, 54-55)(4 R.R. at 143)(C.R. at 187).

PRAYER FOR RELIEF ................................................................... 20

CERTIFICATE OF SERVICE ........................................................ 21

APPENDIX ................................................................................. 23

# INDEX OF AUTHORITIES

## Statutes

Tex. R. App. Proc. 5 ........................................................................................ ii
Tex. R. App. Proc. 21.9 ................................................................................... 8

## U.S. Supreme Court Cases

*Arizona v. Fulminante,*
    499 U.S. 279 (1991) .................................................................................. 11
*Cage v. Louisiana,*
    498 U.S. 39 (1990) ............................................................................. 16, 18
*Strickland v. Washington,*
    466 U.S. 668 (1984) ................................................................................... 6
*Sullivan v. Louisiana,*
    508 U.S. 275 (1993) .................................................................................. 17
*Tumey v. Ohio,*
    273 U.S. 510 (1927) ......................................................................... vi, 9, 11
*Vasquez v. Hillery,*
    474 U.S. 254 (1986) .................................................................................. 11

## Texas Cases

*Abram v. State,*
    35 S.W. 389 (Tex. Crim. App. 1896) ........................................................ 18
*Adkins v. State,*
    418 S.W.3d 856 (Tex. App.—Houston [14th Dist.] 2013, no pet. h.) .............. 19
*Abdygaparova v. State,*
    243 S.W.3d 191 (Tex. App.—San Antonio 2007, pet. ref'd) ..................... 11, 12
*Almanza v. State,*
    686 S.W.2d 157 (Tex. Crim. App. 1985) ............................................... 54, 56
*Anderson v. State,*
    202 S.W. 944 (Tex. Crim. App. 1918) ................................................... vi, 10
*Battee v. State,*
    543 S.W.2d 91 (Tex. Crim. App. 1976) ..................................................... 46
*Bethany v. State,*
    814 S.W.2d 455 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) ............... 5
*Cortez v. State,*
    571 S.W.2d 308 (Tex. Crim. App. 1978) ..................................................... 5

*Crook v. State,*
> 11 S.W. 444 (Tex. Crim. App. 1889) ............................................... 10

*Geesa v. State,*
> 820 S.W.2d 154 (Tex. Crim. App. 1991) ........................................ 16

*Green v. State,*
> 899 S.W.2d 245 (Tex. App.—San Antonio, no pet.) ......................... 5

*Harris v. State,*
> 790 S.W.2d 568 (Tex. Crim. App. 1989) ........................................ 19

*Jimenez v. State,*
> 717 S.W.2d 1 (Tex. Crim. App. 1986) ............................................. 2

*Kirk v. State,*
> 32 S.W. 1045 (Tex. Crim. App. 1895) ............................................ 10

*Lagrone v. State,*
> 209 S.W. 411 (Tex. Crim. App. 1919) .............................................. 9

*Paulson v. State,*
> 28 S.W.3d 570 (Tex. Crim. App. 2000) ...................................... 15, 16

*Rey v. State,*
> 897 S.W.2d 333 (Tex. Crim. App. 1995) ........................................ 10

*Rhodes v. State,*
> 357 S.W.3d 796 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ........... 14

*Simpson v. State,*
> 447 S.W.3d 264 (Tex.App—Houston [1st Dist.] 2013, pet. ref'd) ............ 10, 14

*White v. State,*
> 475 S.W.2d 927 (Tex. Crim. App. 1972) ......................................... 2

## Out of State Cases

*Jackson v. State,*
> 464 So.2d 1181 (Fla. 1985) ....................................................... 3, 4

*State v. Franklin,*
> 327 S.E.2d 449 (W.Va. 1985) ....................................................... 15

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests oral argument because the case presents novel legal issues. Argument would aid the judges of this court in assessing the case.

## STATEMENT OF THE CASE

On October 19, 2010, Petitioner was charged with driving while intoxicated (DWI). (C.R. at 7). The first trial resulted in a conviction, but a new trial was granted. (C.R. at 8-9, 10-25). The second trial also resulted in a conviction. (C.R. at 189). Punishment was assessed at ninety days confinement in the Harris County Jail and a $1000 fine, both probated for one year. (C.R. at 201-02). The Fourteenth Court of Appeals affirmed the trial court's judgment in an opinion dated April 2, 2015. *Appendix, Barfield v. State*, No. 14-13-00518-CR, 2015 Tex. App. LEXIS 3251 (Tex. App. – Houston [14th Dist.] April 2, 2015).

## STATEMENT OF PROCEDURAL HISTORY

The court of appeals issued its opinion on April 2, 2015. *Appendix, Barfield v. State*, No. 14-13-00518-CR, 2015 Tex. App. LEXIS 3251 (Tex. App. – Houston [14th Dist.] April 2, 2015). Petitioner did not file a Motion for Rehearing.

Appellant's petition for discretionary review is due on June 18, 2015.

# QUESTIONS PRESENTED FOR REVIEW

1. Is it an abuse of discretion for a trial court to deny a motion for continuance where trial counsel was without the normal use of his physical and mental faculties after suffering a recent head injury and petitioner was prejudiced by counsel's ineffective assistance at trial. (C.R. at 174-77)(2 R.R. at 4-5, 124)(3 R.R. at 46-47)(6 R.R. at State's Exhibit 1).

2. Does a defendant have to show that the jury actually saw an exhibit admitted into evidence containing a previous DWI conviction and other unadjudicated offenses to demonstrate that she was prejudiced by trial counsel's ineffective assistance for failing to object when it was offered? (3 R.R. at 36-37)(4 R.R. at 164-68)(6 R.R. at Exhibit 1).

3. Would the trial court have erred in overruling an objection to a reference to petitioner's first trial? (3 R.R. at 46-47).

4. Is it fundamental error for the trial court to display a MADD plaque behind the judge's chair, clearly visible to the jury during a DWI trial? (2 R.R. at 5).

5. Did the Court of Appeals err in holding that that the trial court was not impartial? (2 R.R. at 5, 6-7, 116-24)(3 R.R. at 33-34, 45, 46, 90)(4 R.R. at 17-18, 34-36, 46, 49-51, 54, 73, 143, 145, 166).

6. Did the Court of Appeals err in holding that that the trial court's error in defining reasonable doubt in the jury charge did not cause actual harm to petitioner's rights? (4 R.R. at 143)(C.R. at 187).

7. Is error in defining reasonable doubt in the jury charge structural error? (2 R.R. at 22, 34, 54-55)(4 R.R. at 143)(C.R. at 187).

1

## ARGUMENT AND AUTHORITIES

**FIRST QUESTION: Is it an abuse of discretion for a trial court to deny a motion for continuance where trial counsel was without the normal use of his physical and mental faculties after suffering a recent head injury and petitioner was prejudiced by counsel's ineffective assistance at trial. (C.R. at 174-77)(2 R.R. at 4-5, 124)(3 R.R. at 46-47)(6 R.R. at State's Exhibit 1).**

In the first issue on appeal, Petitioner complained that the trial court erred in denying Petitioner's motion for continuance. In the instant case, trial counsel clearly established that he was: (1) being forced to proceed without the normal use of his physical and mental faculties; (2) "too ill" to proceed to trial; (3) under the "disabling" influence of medication. (C.R. at 174)(2 R.R. at 4); (4) suffering from a head injury that required five staples to close the open wound; (5) suffering from an injured clavicle and sternum; (6) taking medication to alleviate the pain; and, (7) unable to "effectively" represent appellant because he was light-headed due to taking pain medicine along with cold medication. *Compare with White v. State*, 475 S.W.2d 927, 928 (Tex. Crim. App. 1972). Nevertheless, the trial judge summarily denied the motion for continuance. (2 R.R. at 5).

Additionally, the record in the instant cause reflects that counsel provided ineffective representation in several respects. *Compare with Jimenez v. State*, 717 S.W.2d 1 (Tex. Crim. App. 1986). First, trial counsel allowed State's Exhibit 1 to be admitted into evidence without the appropriate objection which contained evidence of prior driving while intoxicated offenses and other unadjudicated

2

offenses. (6 R.R. at State Exhibit 1). Additionally, trial counsel failed to object when a witness repetitively referred to the first trial. (3 R.R. at 46-47). Finally, during voir dire proceedings, the trial court called trial counsel's speaking abilities into question in the following exchange:

> MR. THEISEEN: I have to perfect the record. Now I'm going to have to strike Mr. Droke because Mr. Merla is getting one of my strikes, so Mr. Droke is going to get left off.
>
> THE COURT: I didn't hear what your saying. Let's proceed. (2 R.R. at 124).

It is not clear whether trial counsel is slurring his speech, not speaking clearly or having difficulty judging his volume due to his head injury, however, his attempts to "perfect the record" were fruitless as the trial court noted that he was unable to hear trial counsel and, therefore, did not rule on trial counsel's attempt to "perfect the record."

Petitioner and the Court of appeals were unable to find a Texas case exactly on point. However, petitioner's appellate brief cited a Florida case that seems to be on all fours with the case at bar. In *Jackson v. State*, the motion for continuance alleged that trial counsel suffered a head injury for which medication had been prescribed. *Jackson v. State*, 464 So.2d 1181, 1182 (Fla. 1985). It was further alleged that the medication caused the side effect of slurred speech and drowsiness and that these temporary side effects could impair the effectiveness of his

3

representation of the defendant before the jury. *Id.* The trial judge denied the motion upon his belief that defense counsel was adequately articulating matters then before the court. *Id.*

Utilizing the abuse of discretion standard of review, the *Jackson* court stated:

> We realize that, in most circumstances, the trial court should be restrictive in granting motions for continuances and must always be watchful that counsel is not manipulating or improperly delaying the judicial process. Given the unrefuted facts in this record, however, we hold that continuance was required and, accordingly, we reverse appellant's conviction and remand for a new trial.

*Id.* at 1182-1183.

The record demonstrates that Appellant was harmed by trial counsel's condition.

> **SECOND QUESTION: Does a defendant have to show that the jury actually saw an exhibit admitted into evidence containing a previous DWI conviction and other unadjudicated offenses to demonstrate that she was prejudiced by trial counsel's ineffective assistance for failing to object when it was offered? (3 R.R. at 36-37)(4 R.R. at 164-68)(6 R.R. at Exhibit 1).**

During the State's case in chief, the State offered Exhibit 1 into evidence, which contained the 911 recording and dispatcher notes containing four (4) separate statements that Mrs. Barfield was arrested in 2009 for felony DWI, specifically described by case number, and two (2) separate indications that Mrs.

4

Barfield was arrested "at the airport for trying to escape apprehension." (6 R.R. at State Exhibit 1).

Mrs. Barfield's trial counsel admitted that he had not been aware at the time State's Exhibit 1 was offered that the "paperwork" was also a part of the exhibit and that he had not bothered to review the "paperwork" prior to its admission. The record demonstrates that trial counsel's failure to object to the extraneous statements referring to the prior DWI arrest and attempted flight to avoid apprehension was not motivated by sound trial strategy, but instead was attributable entirely to oversight. (4 R.R. at 164-67).

The Court of Appeals found that even assuming counsel was ineffective, petitioner failed to demonstrate prejudice because petitioner did not cite any place in the record showing that the jury ever actually saw the dispatcher notes. No cases could be located requiring an appellant to show in the record when the jury actually saw an exhibit to show harm. *See Cortez v. State*, 571 S.W.2d 308 (Tex. Crim. App. 1978)(no discussion about whether or not the jury actually saw improperly admitted exhibits, but whether their erroneous admission could have affected the jury); *Battee v. State*, 543 S.W.2d 91 (Tex. Crim. App. 1976)(reversing the judgment of conviction where the trial court improperly admitted an evidence envelope containing hearsay); *Green v. State*, 899 S.W.2d 245 (Tex. App.—San Antonio, no pet.)(no discussion by the court of appeals about

whether the jury actually saw the prior mug shots or bank records showing extraneous offenses when considering the ineffective assistance of counsel claim).

Prejudice has resulted from counsel's deficient representation when there is a "reasonable probability" that the results of the proceedings might have been different but for counsel's errors. 466 U.S. 668, 689 (1984). A "reasonable probability" is defined as probability sufficient to undermine the Court's confidence in the outcome of the adversarial process. *Strickland*, 466 U.S. at 694.

Furthermore, the record demonstrates that the jury did see the notes attached to State's Exhibit 1.

| THE COURT: | All right. It will be admitted. |
|---|---|
| MISS MORRISON: | Permission to publish, [y]our Honor? |
| THE COURT: | Yes, ma'am. Can you—all hear? Hold on a minute. |

(3 R.R. at 36-37). Although, the record does not specifically discuss the notes at this point, the record does indicate that State's exhibit 1, containing the notes, was admitted into evidence and published to the jury. (3 R.R. at 36-37).

Additionally, during the jury deliberations, the following exchange occurred:

| THE COURT: | . . . Now we got a note: Can we have the transcripts of the 911 calls from October 18th, 2010 from the three witnesses. **And what I'm going to send back is what's been admitted in evidence as State's Exhibit No. 1.** |
|---|---|

MR. THIESSEN:      Judge, my objection is that State's Exhibit 1, under my understanding, was simply the 911 CD that included all the calls. What you included are the fifteen pages of computer-generated notes. These aren't the transcripts. These are computer-generated pieces of paper from the Houston Emergency Center. It was my understanding the State Exhibit 1 was simply the audio tape CD, and so I object to these pieces of paper coming in. One, they're not the actual transcripts; and two, that they weren't properly admitted because it was my understanding that only the audio CD was State Exhibit 1.

MISS MORRISON:      Well, they were filed with the district clerk on February 27th of 2011, as required, Business Records Affidavit, you know, stapled together. It's marked State Exhibit No. 1. **It was admitted in evidence, so I'm going to send it back.**

(IV R.R. at 167-68)(emphasis added).

Notably, during *voir dire*, the trial court informed the jury that "obviously" if a person who is convicted of driving while intoxicated is shown to have a prior conviction, the range of punishment is higher. (2 R.R. at 40, 42). In light of the false evidence that Mrs. Barfield had been previously arrested for felony DWI, it is only natural to conclude that if a prior conviction for driving while intoxicated will "obviously" increase the punishment range in misdemeanor court, it must take more than one prior conviction for driving while intoxicated to be arrested for "felony DWI."

7

**THIRD QUESTION: Would the trial court have erred in overruling an objection to a reference to petitioner's first trial? (3 R.R. at 46-47).**

A finding or verdict of guilt in the former trial must not be regarded as a presumption of guilt, nor may it be alluded to in the presence of the jury that hears the case on retrial of guilt. A finding of fact or an assessment of punishment in the former trial may not be alluded to in the presence of the jury that hears the case on retrial of punishment. Tex. R. App. P. 21.9(d).

Trial counsel objected to the initial reference to the first trial, but failed to ask the trial judge to instruct the jury to disregard the remark. (3 R.R. at 46-47) Then trial counsel wholly failed to make any objection to the second reference to the first trial. (3 R.R. at 46-47) Rule 21.9 of the Texas Rules of Appellate Procedure exists due to the highly prejudicial nature of evidence being put before a jury that appellant had been previously tried and convicted. There can be no strategic explanation for trial counsel's failure to object the second time the witness alluded to the first trial.

The Court of Appeals held that Tex. R. App. P. 21.9(d) addresses references to a "finding or verdict of guilt" and does not address the admissibility of a mere reference to a prior trial. However, the Court of Appeals' opinion only addresses counsel's reference to "testimony from February 28, 2012." The Court of Appeals' opinion does not mention the witness's reference to his testimony at the "last trial."

8

(3 R.R. at 46-47). It only follows that if there is a subsequent trial petitioner was not acquitted at the first trial. The result of such information provided to the jury would undoubtedly prejudice petitioner.

> **FOURTH QUESTION: Is it fundamental error for the trial court to display a MADD plaque behind the judge's chair, clearly visible to the jury during a DWI trial? (2 R.R. at 5).**

Prior to jury selection, defense counsel requested the trial judge to take down a Mother's Against Drunk Drivers' plaque, which was located behind the judge's chair that was clearly visible from the jury box. (2 R.R. at 5). The trial judge denied the request. (2 R.R. at 5). The Court of Appeals refused to hold that MADD plaque was fundamental error requiring reversal.

Appellant's constitutional right to be tried by an impartial tribunal is sacrosanct, regardless of the evidence against him. *Tumey v. Ohio*, 273 U.S. 510, 535 (1927). Consequently, the law contemplates that the trial judge shall maintain an attitude of impartiality throughout the trial. *Lagrone v. State*, 209 S.W. 411, 415 (1919). The *Lagrone* Court recognized that jurors are prone to seize with alacrity upon any conduct or language of the trial judge, which they may interpret as shedding light upon his view of the weight of the evidence or the merits of the issues involved. Moreover, the delicacy of the situation in which the trial judge is placed requires that he be alert in his communications with the jury, not only to avoid impressing them with any view that he has, but to avoid in his manner and

9

speech things that they may so interpret. *Anderson v. State*, 202 S.W. 944, 946 (Tex.Crim.App. 1918); *Crook v. State*, 11 S.W. 444, 446 (1889); *see Kirk v. State*, 32 S.W. 1045, 1046 (1895).

The First Court of Appeals has addressed this precise issue involving the same judge and the same type of offense, DWI. *Simpson v. State*, 447 S.W.3d 264 (Tex. App—Houston [1st Dist.] 2013, pet. ref'd). The *Simpson* Court reached the unarguable conclusion that the trial judge erred by displaying a MADD plaque. *Id.* However, the *Simpson* court found the error harmless under Texas Rule of Appellate Procedure 44.2(b). *Id.* The *Simpson* court applied the non-constitutional error standard because the defendant couched her argument as a violation of statutory law and the Code of Judicial Conduct. *Id.*

Mrs. Barfield specifically contends the error of displaying a MADD plaque in the instant case was error of constitutional magnitude and that such error is immune from a harm analysis. The court of appeals stated, "[t]he record does not contain any images of the plaque or its location in the courtroom." However, the record *does* contain information on the plaques location in the courtroom. It is located behind the bench, behind the judge's chair. (2 R.R. at 5).

Petitioner relies upon the simple and well-recognized proposition that certain constitutional rights are so basic to a fair trial that their violation can never be treated as harmless. *Rey v. State*, 897 S.W.2d 333, 344 (Tex. Crim. App. 1995).

10

One such basic right is to be tried before an impartial judge. *Tumey, supra.* The United States Supreme Court has recognized numerous times that errors that undermine the structural integrity of the criminal tribunal itself are not amenable to harmless-error review. *Vasquez v. Hillery*, 474 U.S. 254, 263-64 (1986), ("When constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm."). *See also, Arizona v. Fulminante*, 499 U.S. 279, 294, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

> **FIFTH QUESTION: Did the Court of Appeals err in holding that that the trial court was not impartial? (2 R.R. at 5, 6-7, 116-24)(3 R.R. at 33-34, 45, 46, 90)(4 R.R. at 17-18, 34-36, 46, 49-51, 54, 73, 143, 145, 166).**

To avoid further erosions of confidence that our courts do, indeed, treat all litigants with equal fairness, judges must keep themselves above suspicion by scrupulously avoiding situations in which their fairness and integrity could appear to be compromised. *Tamminen v. State*, 644 S.W.2d 209, 218 (Tex. App.—San Antonio 1982), *aff'd*, 653 S.W.2d 799 (Tex. Crim. App. 1983); *Abdygaparova v. State*, 243 S.W.3d 191, 198 (Tex. App.—San Antonio 2007, pet. ref'd).

It is axiomatic that every person accused of a crime is guaranteed a fair trial. *Bethany v. State*, 814 S.W.2d 455, 456 (Tex. App.—Houston [14[th] Dist.] 1991, pet. ref'd). As the Supreme Court and the Court of Criminal Appeals have noted, "the atmosphere essential to the preservation of a fair trial—the most fundamental of all

11

freedoms—must be maintained at all costs." *Id.* (citations omitted). In an appeal of this nature, it is the fundamental purpose of this Court to ascertain whether or not the convicted defendant received a fair trial in the court below. *Id.* In making this determination, ***any indication of prejudice or opinion of guilt on the part of the trial judge requires close scrutiny of his actions.*** *Id.* (emphasis added).

In the instant cause, the trial judge was not impartial and created a coercive atmosphere, which operated to deny Mrs. Barfield a fair trial. In doing so, the trial judge did all but wear the State team colors and clearly displayed that he was "taking sides." *Abdygapporova v. State*, 243 S.W.3d 191, 210 (Tex. App.—San Antonio 2007, pet. ref'd). Specifically, the trial judge's actions include, but are not limited to, the following:

1. Declining to take down his MADD (Mothers Against Drunk Drivers) Plaque clearly visible to the jury (2 R.R. at 5);

2. Forcing Mrs. Barfield's trial counsel to try the instant cause in poor mental and physical health by denying his motion for continuance (2 R.R. at 5);

3. After calling for the jury to enter the courtroom, the trial judge ordered trial counsel to not speak to the jury about his injuries (2 R.R. at 6-7);

4. After calling for the jury to enter the courtroom, the trial judge threatened trial counsel with contempt and a 180 day jail sentence (2 R.R. at 7);

5. Trial counsel stated that his announcement of "not ready" for trial was while the jury panel was in the courtroom and his request to explain that announcement to the jury was denied (2 R.R. at 7);

6. Demonstrating his bias for the State and the police during his questioning of two venirepersons (2 R.R. at 116-124);

7. Coercing trial counsel, in the presence of the jury, to release a witness, Jolivet, from his subpoena rather than allowing the defense to reserve the witness on standby for the defense case in chief (3 R.R. at 33-34);

8. Directing trial counsel's direct examination of Clark (3 R.R. at 45);

9. Refusing to grant a mistrial after a witness, Clark, testified about Mrs. Barfield's first trial which resulted in a guilty verdict (3 R.R. at 46);

10. Refusing to allow the defense to publish evidence to the jury (3 R.R. at 90);

11. Permitting trial by ambush by allowing the State to use evidence without having given the defense notice (4 R.R. at 17);

12. Refusing to allow the defense to take a witness, Cuffy, on voir dire prior to testifying about scientific evidence, namely, horizontal gaze nystagmus (4 R.R. at 17-18);

13. Curtailing the defense's cross examination of Cuffy (4 R.R. at 34-36);

14. Refusing to allow the defense to publish evidence to the jury and controlling the defense's presentation of her evidence (4 R.R. at 46);

15. Curtailing the defense's cross examination of Cuffy (4 R.R. at 49-51);

16. Threatening to hold defense counsel in contempt for effectively cross examining Cuffy regarding horizontal gaze nystagmus (4 R.R. at 51);

17. Directing defense counsel's cross examination of Cuffy (4 R.R. at 54);

18. Refusing to allow the defense to take Downer on voir dire prior to testifying about alcohol "tolerance" (4 R.R. at 73);

19. Defining reasonable doubt (4 R.R. at 143, 145); and

20. Stating "Well, it really doesn't matter what you thought, does it?" when defense counsel attempted to state on the record the circumstances under which State's Exhibit 1 was admitted (4 R.R. at 166).

As the court of appeals noted, the "Court of Criminal Appeals has expressly reserved the question of whether a judge's comments can exhibit a bias to such a

de[c]ree as to constitute fundamental error." (citing *Brumit*, 206 S.W.3d 639, 644-45 (Tex. Crim. App. 2006)).

Additionally, Judge Harmon holds the dubious distinction of being the only Harris County Court at Law judge to have a blanket policy of rejecting all negotiated agreements in DWI cases that would refer a criminal defendant to the 'DIVERT Program." *Rhodes v. State*, 357 S.W.3d 796 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Judge Harmon is also the only Harris County Judge to display a MADD Plaque in a Harris County courtroom. *Simpson v. State*, 447 S.W.3d 264 (Tex.App—Houston [1st Dist.] 2013, pet. ref'd).

These two notable positions demonstrate that Judge Harmon has a bias against DWI defendants in general. And when those positions are viewed in light of the 20 enumerated biased actions in the instant case, it is clear Judge Harmon was biased against Mrs. Barfield. Although the individual instances of conduct complained of, standing alone, *might not* require reversal of this cause, the cumulative effect of such conduct was to deny Mrs. Barfield a fair trial and the effective assistance of counsel. *Bethany*, 814 S.W.2d at 456.

Any system of government that incorporates within its guarantees the idea of ordered liberty necessarily recognizes and appreciates the necessity of providing a process to litigate and resolve allegations of criminal conduct. *Id.* at 462. Under our system of constitutional government, the ultimate aim of such a process must

be fundamental fairness. *Id.* In pursuit of this aim, we rely on an adversarial system to produce just results. *Id.* Where a trial judge abandons his position as a neutral arbiter and takes on the role of an advocate, this system cannot function and fairness is lost. *Id.* *See also State v. Franklin,* 327 S.E.2d 449 (1985) (holding that the presence of 10 to 30 MADD demonstrators wearing MADD buttons operated to violate appellant's fair trial). Mrs. Barfield was denied a fair trial before an impartial judge.

> **SIXTH QUESTION: Did the Court of Appeals err in holding that that the trial court's error in defining reasonable doubt in the jury charge did not cause actual harm to appellant's rights? (4 R.R. at 143)(C.R. at 187).**

Trial counsel objected to the inclusion of a reasonable doubt definition. (4 R.R. at 143). The trial judge overruled the objection, and instructed the jury as follows: "A 'reasonable doubt' is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence." (C.R. at 187).

The Court of Criminal Appeals has held that a judge should not define reasonable doubt without an agreement of the parties. *Paulson v. State,* 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). The Fourteenth Court of Appeals previously held that providing the definition complained of in this case was error. *Adkins v. State,* 418 S.W.3d 856 (Tex. App.—Houston [14th Dist.] 2013, pet ref'd). However, the *Adkins* Court held the error harmless. *Id.* Similarly, the Court of Appeals in the instant case found the error harmless.

15

Mrs. Barfield respectfully requests that this Honorable Court to find that this error is not harmless. First, the definition provided is insufficient to define reasonable doubt. As the *Paulson* Court stated: The first definition [i.e., the definition provided in the instant case] is useless. It is like saying "A white horse is a horse that is white." *Paulson*, 28 S.W.3d at 572. However, the *Paulson* Court failed to recognize that *Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991), did not contain three separate definitions of reasonable doubt, but rather a holistic definition that was composed of more than a single sentence. The second sentence of the *Geesa* instruction states: "It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs." *Ibid.* The two sentences must be read together; by providing only the first definition, the trial judge authorized the jury to convict on a degree of proof below that required by the Due Process Clause of the Fourteenth Amendment. *Cage v. Louisiana*, 498 U.S. 39, 41 (1990). That is why the Fifth Circuit provides the following definition:

> A "reasonable doubt" is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case. Proof beyond a reasonable doubt, *therefore*, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in making the most important decisions of your own affairs.[1]

---

[1] Fifth Circuit 2012 Criminal Jury Instructions, Sec. 1.05, pg. 12. (Emphasis supplied).

Simply stated, once the trial judge undertakes the task of defining reasonable doubt, he must do so correctly. That was not done in Mrs. Barfield's case.

**SEVENTH QUESTION: Is error in defining reasonable doubt in the jury charge structural error? (2 R.R. at 22, 34, 54-55)(4 R.R. at 143)(C.R. at 187).**

The United States Supreme Court has made it clear that failure to adequately instruct a jury on the reasonable doubt standard is "structural error," i.e., error that is not subject to a harm analysis. *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993). Since the erroneous definition of reasonable doubt in this case presents structural error, reversal is required.

The court of appeals recognized that a trial judge errs by including a reasonable doubt instruction in the jury charge. However, the court found the error was harmless under *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985)

In this case, the trial judge said: "...I'll also give the jury a legal definition of what beyond a reasonable doubt means." (2 R.R. at 22). After visiting with several veniremembers regarding their prior jury service, the trial judge continued:

> [Your decision as a juror] is one you will never forget. It is one that will always be upon the records of Harris County, Texas. It is a decision that concerns this individual that you've not seen before, will not see again. It's a decision you can never change. It's a decision that I cannot change. And I would submit to you that's what beyond a reasonable doubt means. In the interest of time and the lunch hour I am not going to read you-all the rather lengthy legal definition but when it shows up in the court's charge I think you will understand and agree it means the same thing that I've been talking to you-all about. (2 R.R. at 34).

As can be seen from these quotations, the trial judge twice mentioned that he would be providing a reasonable doubt definition in the court's charge. The trial judge provided a nonsensical reasonable doubt definition—the "you'll never forget your decision" definition. Counsel has seen and reviewed all manner of reasonable doubt definitions, e.g., "it must be such doubt as would give rise to a grave uncertainty,"[2] "what is required is not an absolute or mathematical certainty, but a moral certainty,"[3] "the mere possibility that the defendant may be innocent will not warrant an acquittal upon the ground of reasonable doubt,"[4] etc., but has never run across the "you'll never forget your decision" definition. Had such a definition been given to the jury in Mrs. Barfield's jury charge, any appellate court would have rejected it as being vague and falling below the requirements of the Due Process Clause. Clearly then, the remarks by Judge Harmon cannot serve to render the error in the instant case harmless.

The *Adkins* Court also noted that reasonable doubt was discussed by the State as the highest standard in our legal system and made clear that the State bears the burden of proving guilt beyond a reasonable doubt. However, in the instant case, the State defined reasonable doubt in the negative:

---

[2] *Cage, supra.*

[3] *Ibid.*

[4] *Abram v. State*, 35, S.W.389, 390 (Tex. Crim. App. 1896).

18

I want to talk to you guys about the burden of proof, cause it's my burden to prove to you at trial today. That is called beyond a reasonable doubt. Now, we can't define beyond -- I can't define beyond a reasonable doubt to you, but what I can tell you is what it is not. Beyond a reasonable doubt does not mean that I prove this case to you beyond all doubt in the world. It does not mean that I prove it to you one hundred percent, because if I could prove it to you one hundred percent you would have been a witness and I would have called you to the witness stand. It's not an impossible burden to meet. (2 R.R. at 54-55).

By defining reasonable doubt in the negative, the State lessened its burden. Accordingly, the State's *voir dire* cannot serve to render the error harmless.[5]

One factor raised but not discussed in the opinion by the court of appeals is whether declaring the error harmless would encourage the trial judge to repeat the error with impunity. The Court of Criminal Appeals stated twenty-five years ago that an appellate court when conducting a harm analysis "should not focus on the propriety of the outcome of the trial [but] [i]nstead an appellate court should be concerned with the integrity of the process leading to the conviction. *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989).

The error in the instant case arose from the same court and the same judge in *Adkins*. After having already declared the error harmless in *Adkins*, if this Honorable Court does so again in this case, the trial judge will feel emboldened to

---

[5] Mrs. Barfield's trial counsel covered the various levels of proof beginning with reasonable suspicion and ending with reasonable doubt. (2 R.R. at 103–08).

19

continue committing error by defining reasonable doubt in his jury charges with the knowledge that the error will be implicitly sanctioned on appeal.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Petitioner prays that this Honorable Court grant this Petition for Discretionary Review. Following the grant of review, Petitioner prays that the judgment of the Court of Appeals be reversed, Petitioner's conviction be reversed, and the case remanded the case for a new trial.

Respectfully submitted,

*/s/ Brittany Carroll Lacayo*
BRITTANY CARROLL LACAYO
Texas Bar No. 24067105
212 Stratford St.
Houston, Texas 77006
Telephone: (713) 504-0506
Facsimile: (832) 442-5033

ATTORNEY FOR PETITIONER

20

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was delivered via facsimile on June 17, 2015 to the following persons:

Devon Anderson
District Attorney
Harris County District Attorney's Office
Appellate Division
1201 Franklin Street Suite 600
Houston, Texas, 7002
Telephone: (713) 755-5826
Facsimile: (713) 755-5809

Lisa McMinn
State Prosecuting Attorney
P.O. Box 13046
Austin, Texas 78711
Telephone: (512) 463-1660
Facsimile: (512) 463-5724

*/s/ Brittany Carroll Lacayo*
BRITTANY CARROLL LACAYO

## CERTIFICATE OF COMPLIANCE

This petition complies with Tex. R. App. P. 9.4 because it was computer-generated and contains 4,459 words.

*/s/ Brittany Carroll Lacayo*
BRITTANY CARROLL LACAYO

22

# APPENDIX



**LISA ANN BARFIELD, appellant v. THE STATE OF TEXAS, Appellee**

**NO. 14-13-00518-CR**

**COURT OF APPEALS OF TEXAS, FOURTEENTH DISTRICT, HOUSTON**

**2015 Tex. App. LEXIS 3251**

**April 2, 2015, Opinion Filed**

**PRIOR HISTORY:** [*1] On Appeal from the County Criminal Court at Law No. 2, Harris County, Texas. Trial Court Cause No. 1714161.
Barfield v. State, 2012 Tex. App. LEXIS 5408 (Tex. App. Houston 14th Dist., July 10, 2012)

**COUNSEL:** For APPELLANT: Charles F. Baird, AUSTIN, TX; Eusebio Pastrano, HOUSTON, TX.

For STATE: Dan McCrory, HOUSTON, TX.

**JUDGES:** Panel consists of Justices Boyce, Jamison, and Donovan.

**OPINION BY:** Martha Hill Jamison

**OPINION**

Appellant Lisa Ann Barfield appeals from her conviction for driving while intoxicated (DWI). A jury found her guilty and assessed punishment at ninety days' confinement and a $1,000 fine, both of which were probated for one year. In nine issues, appellant contends (1) the trial court erred in denying her motion for continuance; (2) her trial counsel was ineffective in failing to object to evidence of extraneous offenses; (3) counsel was ineffective in offering evidence of appellant's invocation of her right to counsel and failing to object to the use of that invocation as direct evidence of guilt; (4) counsel was ineffective in failing to object to testimony regarding appellant's first trial; (5) the trial judge erred in displaying a Mothers Against Drunk Driving (MADD) plaque in the courtroom; (6) appellant was denied a fair trial because the trial judge was not impartial; (7) the trial court erred by providing a definition of reasonable

doubt in the jury charge; (8) appellant was harmed by inclusion of [*2] the definition; and (9) the trial court's judgment should be modified to remove the notation of a blood-alcohol content level as no such level was proven. We modify the trial court's judgment to remove the blood-alcohol content notation and affirm the judgment as so modified.

**I. Background**

Appellant was arrested for suspected DWI on October 18, 2010. Prior to her arrest, three separate individuals, Paul Jolivet, Dennis Clark, and John Stewart, called 9-1-1 to report concerns regarding her driving. Recordings of the 9-1-1 calls were played for the jury. Jolivet also testified at trial, stating that around 5:30 p.m., he observed appellant driving on a highway when she appeared "pretty intoxicated" and was "bobbing and leaning over" within her vehicle. He further explained that her erratic driving, zigzagging, tailgating, and "hitting [the] brakes pretty hard" led other drivers to honk their horns and clear a path for her. Jolivet was concerned that appellant was about to cause "a tragedy, an accident."

Clark testified that he observed appellant driving in stop-and-go traffic; when appellant was stopped, her body was leaned forward over the steering wheel, but when she pressed the accelerator, [*3] her body would lean back. According to Clark, appellant's eyes appeared to be closed. He called 9-1-1 because it appeared to be "inevitable that she was going to hit somebody." He further stated that other vehicles were avoiding appellant and she was being followed by two tow trucks. Clark described her as being "under the influence of something, whether it be alcohol or pills." Stewart did not testify at trial, but he informed the 9-1-1 operator that

appellant was "all over the freeway," appeared to be intoxicated, and was forcing people off the road. He was concerned appellant was going to kill someone with her driving.

Officer Kaleal Johns responded to the call from dispatch and located appellant's vehicle stopped at a red light. Johns pulled behind appellant's vehicle, turned on his lights and siren, and used a loudspeaker to repeatedly instruct appellant to pull to the side of the road. Appellant, however, continued to drive until she reached another red light. At that point, Johns exited his car, knocked on appellant's window, and instructed her to roll the window down. Johns said that appellant just looked at him with glassy, red, bloodshot eyes. He instructed her again to roll [*4] down the window, and when she failed to do so, he instructed her to open her door. When she failed to follow that instruction as well, Johns opened the door. He said that a smell of alcohol "saturat[ed]" the interior of the vehicle and he detected it on her breath as well. He asked her if she was okay, but she just looked at him "like she was confused or dazed." He instructed appellant to place her vehicle in park, but she again failed to comply so he put the car in park himself. Johns then placed appellant in the back of his police car to await the arrival of additional officers. He stated that appellant became belligerent while they waited.

Officer Joel Cuffy testified that when he arrived on the scene, he observed that appellant's eyes were red and glassy and she had a strong odor of alcohol on her breath. Further according to Cuffy, appellant initially denied having consumed any alcoholic beverages but subsequently admitted to consuming four glasses of Merlot while at a restaurant shortly before driving. Cuffy performed two field sobriety tests on appellant: the horizontal gaze nystagmus test (HGN) and the one-leg stand test. During the HGN test, Cuffy noted the presence of all six positive [*5] indicators for intoxication, while three of four positive indicators were observed during the one-leg stand. Based on his observations, Cuffy concluded that appellant was intoxicated.

Officer Donald Downer also responded to the scene and detected a strong odor of alcohol coming from appellant. After Downer transported appellant to a police station, she refused breathalyzer and blood testing. Based on the odor and his interaction with appellant, during which she repeated certain questions and at times failed to comprehend what was being said to her, Downer concluded that appellant was intoxicated. Downer additionally testified that he and Johns prepared the offense report, which he acknowledged contained some errors, such as noting her eyes were clear when he recalled them being bloodshot. He explained that the report is completed using drop-down computer menus and he or Johns

must have made the wrong selection regarding appellant's eyes.

A video taken at the station also was admitted into evidence. In the video, appellant repeatedly refuses to perform a breath test or any sobriety tests, and she repeatedly requests her attorney, including by name. Appellant speaks slowly but coherently [*6] in the video. She states that she does not trust the police in Harris County and that she believed she would be charged regardless of how she performed on any of the tests. The video is time stamped as beginning at 7:51 p.m., approximately two hours and twenty minutes after she was reported to be driving erratically, and the person in the video attempting to administer the tests also states the time as the video begins.

In her testimony, appellant denied having consumed any alcoholic beverages on the day she was arrested. She explained that she suffered from chronic back pain as well as certain psychological disorders, and as a result, she had been prescribed several medications, although at the time of her arrest she had been unmedicated for about a month due to a lapse in medical insurance. She further described several sources of stress that she was under at the time of her arrest, including that her husband was working overseas and she had two exchange students living with her and her son. She denied having been at a restaurant before her arrest and stated she was distracted by a telephone call during her drive and had reached to the floorboard at one point to pick up papers that [*7] had fallen. She further recalled a tow truck "herding" her and keeping her from the exit she wanted to take. She denied that she permitted Cuffy to perform any sobriety tests on her.

This appeal stems from the second trial in this case. Following the first trial, appellant was convicted by a jury, but the trial court granted her motion for a new trial. While the motion stated numerous grounds including ineffective assistance of counsel and the fact the jury was permitted to hear evidence of appellant's requests for counsel, the trial court did not specify the grounds on which a new trial was granted. As will be discussed more fully below, at the beginning of the second trial, appellant's counsel requested a continuance based on the fact counsel had received injuries in a recent accident and was taking pain medication. The trial court denied the motion. Following the second trial, appellant was found guilty and sentenced to ninety days' confinement and a $1,000 fine, both of which were probated for one year.

## II. Assistance of Counsel

In issues two through four, appellant contends that she received ineffective assistance of counsel because her trial counsel failed to object to the introduction [*8]

of a prior DWI conviction and another unadjudicated extraneous offense, offered evidence that appellant invoked her right to counsel and failed to object to the use of that invocation as direct evidence of guilt, and failed to object to testimony regarding appellant's first trial.

## A. Standard of Review

An appellate court reviews the effectiveness of counsel according to the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under this standard, a defendant must (1) demonstrate that trial counsel's performance was deficient and fell below an objective standard of reasonableness, and (2) "affirmatively prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

Review of a trial counsel's performance is highly deferential, as there is a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, [appellant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Ordinarily, trial counsel should be afforded an opportunity to explain his or her actions, and in the absence of such opportunity, [*9] an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). To establish ineffective assistance of counsel based on a failure to object, appellant must demonstrate that the trial court would have committed harmful error in overruling the objection had trial counsel objected. *DeLeon v. State*, 322 S.W.3d 375, 381 (Tex. App.--Houston [14th Dist.] 2010, pet. ref'd). The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective, and any allegations of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813.

## B. Extraneous Acts

Appellant first asserts that her counsel was ineffective in failing to timely object to the admission of evidence concerning extraneous offenses allegedly committed by appellant. This complaint stems from the admission of State's Exhibit 1, which included the tapes of the 9-1-1 calls that were played to the jury. During its deliberations, the jury sent out a note asking for a transcript of the 9-1-1 calls. At that time, defense counsel realized that not only did Exhibit 1 include the tape recordings but it also included notes that were apparently sent from the 9-1-1 dispatcher to the responding police officers. [*10]

These notes included references to prior arrests of appellant for DWI and evading arrest. When defense counsel realized that these notes were part of State's Exhibit 1, he objected, explaining that he had not realized at the time the exhibit was admitted that it included the notes. The trial court did not rule on the objection. Instead, the judge called the jury back into the courtroom and asked them if they wanted to listen to the 9-1-1 tapes again. The foreman responded, "Yes, sir," and the tapes were played in the courtroom.

Appellant contends that admission of this extraneous offense evidence (i.e., the dispatcher notes in Exhibit 1) violated the Confrontation Clause of the Sixth Amendment to the United States Constitution as well as provisions of the Texas Rules of Evidence. *See* U.S. Const. Amend. VI; Tex. R. Evid. 404(b), 609; *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *Wood v. State*, 260 S.W.3d 146, 148-49 (Tex. App.--Houston [1st Dist.] (Tex. App.--Houston [1st Dist.] 2008, no pet.). But even assuming appellant is correct that admission of the notes violated these provisions and counsel therefore was ineffective in not timely objecting to the notes, appellant has not on this record demonstrated that counsel's allegedly inadequate representation prejudiced her case. *See Thompson*, 9 S.W.3d at 812 (explaining that second prong of *Strickland* requires appellant to affirmatively prove prejudice by showing a reasonable probability that, [*11] but for counsel's unprofessional errors, the result of the proceeding would have been different). Appellant does not cite any place in the record that demonstrates the jury ever actually saw the dispatcher notes. The notes were not mentioned before the jury either when Exhibit 1 was admitted into evidence and the tapes were originally played or when the tapes were again played in the courtroom during jury deliberations. The record clearly shows that at no point were the notes mentioned before the jury, much less emphasized to them. *See Motilla v. State*, 78 S.W.3d 352, 356 (Tex. Crim. App. 2002) (noting that whether the State emphasized error can be a factor in harm analysis). Appellant has failed to meet her burden of demonstrating prejudice firmly founded in the record. *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996); *Young v. State*, 425 S.W.3d 469 (Tex. App.--Houston [1st Dist.] 2012, pet. ref'd). Consequently, we overrule appellant's second issue.

## C. Invocation of Right to Counsel

In her third issue, appellant contends her counsel was ineffective in offering evidence concerning her request for counsel when she was taken into police custody and in failing to object when this evidence was allegedly used as direct evidence of guilt. Counsel in fact raised appellant's invocation of her right to counsel [*12] sev-

eral times during trial, including during opening statements, examination of police officers and appellant herself, and closing arguments. The fact of her invocation was also raised in the playing of the video of appellant made at the police station and during the prosecutor's direct examination of Officer Downer and cross-examination of appellant. Appellant particularly points out that counsel elicited and did not object during the following exchange between defense counsel and Officer Downer.

> Q: And you stated, I think, she is intoxicated because she keeps asking for an attorney, right?
>
> A: That's just one of the signs, cause we [would] be talking and then she'd bring it up every five seconds or so.

Appellant urges that in this exchange, her request for counsel was used as direct evidence of her guilt.

The admission of evidence that a criminal defendant invoked his or her right to counsel after receiving *Miranda* warnings for the purpose of proving guilt may violate the defendant's constitutional right to due process. *See Griffith v. State*, 55 S.W.3d 598, 604-07 (Tex. Crim. App. 2001); *Hardie v. State*, 807 S.W.2d 319, 320-22 (Tex. Crim. App. 1991); *see also Lajoie v. State*, 237 S.W.3d 345, 352-53 (Tex. App.--Fort Worth 2007, no pet.) (holding that although admission of evidence regarding invocation of counsel before *Miranda* warnings may not have violated constitutional rights, such [*13] evidence was more prejudicial than probative and should not have been admitted). Here, Downer's testimony indicated appellant requested counsel both before and after receiving *Miranda* warnings.

This case, however, does not present a simple failure of defense counsel to object to the State's use of a defendant's invocation of counsel as evidence of guilt. Defense counsel here used the repeated invocation of counsel to support two of the defense's main theories: (1) appellant was not in fact intoxicated at the time of her detention, as evidenced by the fact she was able to calmly and coherently request counsel by name on the videotape; and (2) appellant's request for counsel and refusal to perform the sobriety tests at the station demonstrated her distrust of Houston police, as also stated on the videotape.[1] *See Strickland*, 466 U.S. at 689 (explaining that review of a trial counsel's performance is highly deferential and includes a strong presumption that the challenged action may have been sound trial strategy).

> 1 In opening statements, defense counsel suggested that appellant's calm and coherent requests

for counsel demonstrated that she was sober. Counsel further expressed confusion as to why the police did not [*14] allow appellant access to her attorney. Appellant explained in her testimony that she requested her attorney "to help explain my rights to me and [because she] didn't feel safe or trusting in the environment [she] was in with the police." She further explained that part of her distrust of the officers came from the fact that they had arrested her when she was not intoxicated. In closing argument, defense counsel further highlighted the refusal by police officers to allow her access to an attorney as evidence that the police were not conducting their investigation appropriately.

Appellant contends that reversal is warranted based on *Winn v. State*, 871 S.W.2d 756 (Tex. App.--Corpus Christi 1993, no writ); according to appellant, *Winn* is indistinguishable from the present case. We disagree. The defense counsel in *Winn* testified during a habeas corpus hearing that he offered a videotape which included the defendant invoking his right to counsel because he thought it supported the defendant as a witness, although he did not explain specifically how he thought it would do so. *Id.* at 764. The court of appeals reviewed the tape and could not discern any way in which it could have helped the defendant or been a part of a sound trial strategy. *Id.* The court actually did [*15] not mention the invocation of counsel on the videotape as being problematic but instead noted that the defendant's use of profanity, refusal to answer questions, attitude, and other statements did not help the defendant's credibility. *Id.* Additionally, the introduction of the videotape in that case was only one of several allegations regarding counsel's performance that led the court of appeals to conclude the defendant received ineffective assistance of counsel. *Id.* at 764-65. In contrast, defense counsel in the present case had a clear strategy that supported use of the videotape and other references to appellant's request for counsel.[2] *See Cacy v. State*, 901 S.W.2d 691, 700 (Tex. App.--Houston [14th Dist.] 1995, pet. ref'd) (rejecting suggestion that failure to object to evidence of defendant's invocation of her right to counsel could not have had a strategic basis).

> 2 Although not cited by appellant, we also find *Ex parte Skelton*, 434 S.W.3d 709 (Tex. App.--San Antonio 2014, pet. ref'd), to be distinguishable for similar reasons. In *Skelton*, a habeas corpus proceeding, defense counsel offered inconsistent explanations regarding why he failed to object to evidence regarding the defendant's request for counsel. *Id.* at 721. This, along with the fact that the evidence contradicted the defendant's position that she had been open and cooperative

with police officers, [*16] led the court of appeals to conclude that there was no strategic value to not objecting under the circumstances. *Id.* at 720-4.

In contrast, the introduction of evidence and failure to object here were integral to the defense's strategy. Furthermore, it is unclear how defense counsel could have gotten these points across without including the requests for counsel. The videotape is replete with appellant's requests, and it was in relation to her requests for counsel and refusal to perform sobriety tests that she spoke of her distrust of Houston police.

Once the appellant used her request for counsel defensively, the State then had a right to suggest an alternative interpretation of the repeated requests, such as put forth in the excerpt from Downer's testimony above. *Cf. Szmalec v. State*, 927 S.W.2d 213, 217 (Tex. App.--Houston [14th Dist.] 1996, pet. ref'd) (holding state could impeach defendant with his own silence once the issue was raised defensively). Moreover, it was the repetitiveness of the requests, and not the nature thereof, that Downer suggested as indicative of intoxication. Also, defense counsel may have been reluctant to object to this testimony because he didn't want to bring further attention to Downer's suggestion the request for counsel was evidence of guilt. Counsel [*17] reasonably may have concluded that Downer's seemingly dismissive attitude toward appellant's rights supported the defensive theory that appellant did not agree to the sobriety tests because she distrusted Houston police. Under these circumstances, appellant has failed to meet her burden of establishing that her counsel performed deficiently in presenting and failing to object to evidence of her invocation of the right to counsel. *See Thompson*, 9 S.W.3d at 813. Consequently, we overrule her third issue.

### D. References to First Trial

In issue four, appellant contends trial counsel was ineffective in failing to object to testimony concerning the prior trial. During an exchange between defense counsel and Clark, one of the witnesses who called 9-1-1, counsel first objected to Clark's reference to the earlier trial, but when the objection was overruled, counsel used Clark's testimony from the prior trial to impeach his response to a question. Counsel referred to "testimony from February 28, 2012."

As explained above, to establish ineffective assistance of counsel based on a failure to object, an appellant must demonstrate that the trial court would have committed harmful error in overruling an objection. *See DeLeon*, 322 S.W.3d at 381. The [*18] only authority appellant cites is Texas Rule of Appellate Procedure 21.9, which

states in relevant part: "A finding or verdict of guilt in the former trial must not be regarded as a presumption of guilt, nor may it be alluded to in the presence of the jury that hears the case on retrial of guilt." Tex. R. App. P. 21.9(d). This rule addresses references to a "finding or verdict of guilt" and does not address the admissibility of a mere reference to a prior trial. Accordingly, appellant has not demonstrated that the trial court would have erred in overruling an objection to this testimony had one been made. We therefore overrule her fourth issue.

### III. Motion for Continuance

In her first issue, appellant contends the trial court erred in denying her motion for continuance. On the day trial began, defense counsel appeared, announced "not ready for trial," and requested a continuance.[3] Counsel explained that he had been in a bicycle accident and sustained head trauma which required staples on his scalp. He also had injured his sternum and right clavicle, which apparently restricted his arm movements. He further stated that he was "feeling light-headed" and was on medication for pain as well as a cold. He concluded that "I cannot effectively represent [*19] my client with these injuries and my sickness." The trial court denied the motion for a continuance and trial began.

> 3 Appellant also filed a written motion for continuance on the same day. This was apparently appellant's first request for a continuance.

We review a trial court's denial of a motion for continuance for an abuse of discretion. *See Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996); *see also Rosales v. State*, 841 S.W.2d 368, 372-73 (Tex. Crim. App. 1992) (granting or denying continuance based on the illness of counsel is within the trial court's discretion). To establish that the trial court abused its discretion by denying the motion for continuance, appellant must show actual prejudice to her defense resulted from counsel's representation. *See Janecka*, 937 S.W.2d at 468; *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995). Examples of prejudice include unfair surprise, an inability to effectively cross-examine the State's witnesses, and the inability to elicit crucial testimony from witnesses. *See Janecka*, 937 S.W.2d at 468. Texas courts have concluded that no prejudice is shown when a defendant is ably represented throughout trial by *substitute* counsel. *See Miller v. State*, 537 S.W.2d 725, 726 (Tex. Crim. App. 1976); *State v. Doyle*, 140 S.W.3d 890, 894 (Tex. App.--Corpus Christi 2004, pet. ref'd). However, appellant has not cited and research has not revealed any Texas cases specifically addressing a situation such as here, where defense counsel demonstrated recent injuries and expressed concern as to whether he could [*20] provide effective representation, yet a prop-

er motion for continuance was denied. Nonetheless, it appears clear under *Janecka*, et. al, that appellant still must show specific prejudice to her defense resulted from denial of the motion for continuance. 937 S.W.2d at 468.

The most closely analogous case appears to be *Jimenez v. State*, in which defense counsel learned shortly before trial that he was required to have cancer surgery as soon as possible. 717 S.W.2d 1 (Tex. Crim. App. 1986). The trial court denied counsel's motion for continuance, but the court of appeals reversed and ordered a new trial because the defendant had been forced to stand trial "represented by counsel with mind distracted by medical problems who must hurry through the trial in order to have carcinoma surgery when scheduled." *Id.* at 2 (quoting court of appeals). The Court of Criminal Appeals then reversed the court of appeals, holding that no actual prejudice was shown in the record because the defendant was ably represented through trial by counsel. *Id.* Although not directly on point because, unlike here, counsel in *Jimenez* did not allege any current disability, this case does generally support the rule that simply alleging a physical problem is not enough to support [*21] reversal; prejudice must be shown in the record. *See Janecka*, 937 S.W.2d at 468.[4]

4   In *Stevens v. State*, the Court of Criminal Appeals considered an appeal from a defendant who was put to trial without his attorney despite an affidavit from the attorney and a certificate from a doctor, stating, in substance, that the attorney was unable to appear due to illness. 128 Tex. Crim. 531, 532-33, 82 S.W.2d 148, 148-49 (1935). The defendant had been unable to hire substitute counsel, though he consulted all three attorneys in town. *Id.* The Court held that, under those circumstances, the trial court abused its discretion in refusing to continue the case and thereby substantially deprived the defendant of counsel. *Id.*, 128 Tex. Crim. at 533-34, 532-33, 82 S.W.2d at 149. The circumstances of the present case are distinguishable from the facts in *Stevens* because the record here does not establish that appellant was substantially deprived of counsel.

We note at the outset that appellant's motion for new trial did not allege any prejudice resulted from counsel's condition or otherwise attempt to develop a record as to counsel's performance at trial and the effect, if any, of his medical condition on that performance. *See Jimenez*, 717 S.W.2d at 2 (noting defendant did not file a motion for new trial or otherwise develop a record regarding counsel's performance). [*22] In her appellate briefing on this issue, appellant principally makes the same arguments that are discussed above concerning her ineffec-

tive assistance of counsel claims, relating to failure to object to the evidence of extraneous offenses or testimony mentioning the first trial in this case and the offer of evidence concerning her invocation of the right to counsel. For the same reasons that we found these assertions did not establish ineffective assistance of counsel, we find that they do not establish prejudice from the denial of the motion for continuance. Moreover, they do not establish that appellant was substantially deprived of counsel.

Next, appellant points to a brief exchange between her counsel and the judge, which occurred during voir dire proceedings. The exchange came immediately after a member of the jury panel was questioned by the judge and the judge determined not to strike the venireperson for cause. The exchange went as follows:

> [Defense Counsel]: I need to make a request for extra strikes under the law that [venireperson] was caused [sic] for a peremptory strike. Now I'll have to use my own strikes to strike him. I'd actually like an extra strike.
>
> THE COURT: Denied. [*23]
>
> [Defense Counsel]: I have to perfect the record. Now I'm going to have to strike [another venireperson] because [venireperson] is getting one of my strikes, so [the other venireperson] is going to get left off.
>
> THE COURT: I didn't hear what [you're] saying. Let's proceed.

Appellant suggests that this exchange, and particularly the judge's final reaction, demonstrated defense counsel may have been "slurring his speech, not speaking clearly or having difficulty judging his volume due to his head injury." She then cites a Florida appellate opinion in which the court held that the trial court abused its discretion in denying a motion for continuance when unrefuted facts established that defense counsel's physical condition from a recent head injury prevented him from adequately representing his client. *Jackson v. State*, 464 So.2d 1181, 1182 (Fla. 1985).[5] We do not agree, however, that this brief, ambiguous exchange presented unrefuted facts or otherwise established that appellant's counsel was impaired, much less that his physical condition prejudiced appellant's defense. *See Janecka*, 937 S.W.2d at 468. Moreover, there is no showing on this record that counsel was unable to effectively cross-examine the State's witnesses or otherwise develop cru-

cial testimony through [*24] other witnesses. *See id.* Accordingly, we overrule her first issue.

> 5 In *Jackson*, in addition to the motion for continuance, defense counsel made several references to his medical problems and how they were adversely affecting his performance during the course of jury selection and during the trial itself. 464 So.2d at 1182. At one point during the proceedings, counsel made an oral motion to withdraw based upon his inability to effectively assist his client but the motion was denied. *Id.* Appellant also filed a motion for new trial that presented evidence from counsel and his physician that counsel's medical condition impaired his ability to effectively represent his client. *Id.*

## IV. MADD Plaque

In her fifth issue, appellant contends the trial judge erred in displaying a plaque in the courtroom that had the acronym MADD on it, because it violated the rule that a judge should maintain an attitude of impartiality and not impress upon jurors any view that he or she may hold regarding the case at hand, citing *Anderson v. State*, 83 Tex. Crim. 261, 265-66, 202 S.W. 944, 946 (Tex. Crim. App. 1918). Defense counsel requested the plaque be removed during a conference on motions in limine, as follows:

> [Defense Counsel]: Okay. Second motion in limine, Judge, we ask you to take down your Mother[s] Against Drunk [*25] Drivers' plaque that's sitting behind your bench. The label MADD is clearly visible over the picture frame that you put in front of it. And, as an officer of the court, from standing and sitting in the jury box, it's clearly visible that you have a Mother[s] Against Drunk Drivers' plaque behind your chair.
>
> THE COURT: Denied.

As appellant acknowledges, our sister court recently considered an appeal involving the same trial judge and apparently the same plaque. *See Simpson v. State*, No. 01-12-00380-CR, 2014 Tex. App. LEXIS 6527, 2014 WL 2767126, at *6-10 (Tex. App.--Houston [1st Dist.] June 17, 2014) (mem. op., not designated for publication), *pet. ref'd*, 447 S.W.3d 264 (Tex. Crim. App. 2014). The defendant in *Simpson* argued that displaying the plaque violated statutory law and judicial conduct rules and improperly influenced the jury. 2014 Tex. App. LEXIS 6527, [WL] at *5. The First Court held that even

assuming the refusal to remove the plaque constituted error, any such error was harmless in that case, applying the harm analysis standard for nonconstitutional error. 2014 Tex. App. LEXIS 6527, [WL] at *5-7; *see also* Tex. R. App. P. 44.2(b) (stating that any nonconstitutional error that "does not affect substantial rights must be disregarded").

Appellant contends that the analysis in *Simpson* is distinguishable because she is asserting here that displaying the plaque violated her constitutional rights, whereas the defendant in *Simpson* only alleged violations [*26] of statutory law and the Code of Judicial Conduct. 2014 Tex. App. LEXIS 6527, 2014 WL 2767126, at *5. Constitutional error requires a significantly different harm analysis. *See* Tex. R. App. P. 44.2(a) ("If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.").

We note at the beginning of our analysis that appellant did not raise any constitutional arguments concerning the MADD plaque in the trial court, including in her motion for new trial. As can be seen in the excerpt above, defense counsel did not offer any specific reason for requesting removal of the plaque and specifically did not mention any constitutional rights as grounds necessitating the plaque's removal. *See* Tex. R. App. P. 33.1(a) (requiring that to preserve error, a complaint must state the grounds for the ruling that the complaining party seeks from the trial court with sufficient specificity to make the court aware of the complaint, unless the specific grounds are apparent from the context); *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009) (discussing Rule 33.1(a) and stating that "a party must be specific enough so as to 'let the trial judge know what he [*27] wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it,'" quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)); *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002) (discussing the policies behind requiring specific objections even in regards to constitutional error); *Tollett v. State*, 422 S.W.3d 886, 896 (Tex. App.--Houston [14th Dist.] 2014, pet. ref'd) (holding defendant waived contention that trial court committed constitutional error by not specifically raising constitutional issue in the trial court).

Appellant argues, however, that the judge's display of the plaque violated her constitutional rights to be tried by an impartial tribunal and may have given the jury an impression of his views. Except for complaints involving fundamental constitutional requirements, all other com-

plaints based on a violation of both constitutional and statutory rights are waived by failure to comply with Rule 33.1. *Mendez v. State*, 138 S.W.3d 334, 338 (Tex. Crim. App. 2004). Fundamental errors include violations of rights that are either "absolute" or "not forfeitable." *Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014). Such errors need not be preserved to be raised on appeal, and sometimes do not require a harm analysis in order to necessitate reversal of a conviction. *See id.; Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).[6]

6 Appellant makes her constitutional error assertion only in arguing whether a harm analysis [*28] is required, but her arguments are equally applicable to whether preservation was required. We will broadly construe her brief as alleging fundamental constitutional error that is exempt from the requirements of rule 33.1.

In *Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000), the trial judge commented to the venire panel, among other statements, that the defendant had seriously considered entering into a plea agreement. 41 S.W.3d 130, 132. A plurality of justices found this conduct to be fundamental error as it "tainted," "damaged," and "vitiated" the presumption of innocence.[7]*Id.* at 132, 135. The court held this error required no objection and performed no harm analysis.[8]

7 A fifth justice would have held that the judge's comments in their entirety violated the right to an impartial judge. *Blue*, 41 S.W.3d at 135 (Keasler, J., concurring in the judgment only).

8 As described in a concurring opinion,

The trial judge['s] first statement told the jury, essentially, the State and appellant were discussing how appellant would plead but appellant was having difficulty in deciding how to plead. Furthermore, the statement told the jury it was, in the opinion of the trial judge, appellant's fault for the delay in trying the case and that everyone would save time if appellant would simply plead (presumably guilty). [*29] The second statement told the jury a defense attorney may have an obligation to present false testimony. The third statement told the jury that, in the judge's opinion, very few defendants, over a forty-year period, had been found not guilty.

*Blue*, 41 S.W.3d at 134-35 (Mansfield, J., concurring).

The display of the MADD plaque in the present case was not of the same magnitude as the judge's comments in *Blue* and does not rise to the level of fundamental error. *See Blue v. State*, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000) (holding judge's comments did not rise to such a level as to vitiate the presumption of innocence or the impartiality of the jury as in *Blue*); *see also Chanthakoummane v. State*, No. AP-75,794, 2010 Tex. Crim. App. Unpub. LEXIS 249, 2010 WL 1696789, at *11 (Tex. Crim. App. Apr. 28, 2010) (not designated for publication) (holding judge's comments "did not go so far as to taint the presumption of innocence"). The only information in this record regarding the plaque is defense counsel's representation that the plaque was visible from the jury box and had the acronym "MADD" on it. No mention of the plaque was made in front of the jury. The record does not contain any images of the plaque or its location in the courtroom. The plaque was clearly not specific to this defendant, as were the judge's comments in *Blue*, and there is no suggestion that it expressly referenced guilt or innocence [*30] in any way. We decline to hold that the refusal to remove the MADD plaque was fundamental error requiring reversal even though not properly preserved for appellate review. We therefore overrule appellant's fifth issue.

## V. Impartiality of Judge

In issue six, appellant contends the trial judge committed a litany of actions that demonstrated bias against her and denied her a fair trial.[9] Due process requires a neutral and detached hearing body or officer. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973)). However, not every complaint about a judge or the conduct of a trial implicates constitutional due process protections; indeed, "most matters relating to judicial disqualification [do] not rise to a constitutional level," and "matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009) (quoting respectively *FTC v. Cement Institute*, 333 U.S. 683, 702, 68 S. Ct. 793, 92 L. Ed. 1010, 44 F.T.C. 1460 (1948), and *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S. Ct. 437, 71 L. Ed. 749, 5 Ohio Law Abs. 159, 5 Ohio Law Abs. 185, 25 Ohio L. Rep. 236 (1927)); *see also Avilez v. State*, 333 S.W.3d 661, 673-74 (Tex. App.-Houston [1st Dist.] 2010, pet. ref'd) (quoting *Caperton*).

9 The specific actions she complains of include: refusing to remove the MADD plaque, denying the motion for continuance and threatening counsel with contempt if he mentioned the ruling to the jury, questioning two venirepersons, "coercing" counsel to release a witness from subpoena, "directing" or "curtailing" [*31] counsel's examination of certain witnesses, refusing to grant a mistrial after a witness mentioned the first trial, refusing to allow the defense to publish appellant's mugshot to the jury, permitting the State to use evidence without having given the defense notice, refusing to allow counsel to take two witnesses on voir dire prior to testifying about scientific evidence, defining reasonable doubt in the jury charge, stating "Well, it really doesn't matter what you thought, does it?" when counsel attempted to state on the record the circumstances under which State's exhibit 1 was admitted, and maintaining a blanket policy of rejecting all negotiated agreements in DWI cases that would refer a criminal defendant to the "DIVERT" Program.

Absent a clear showing of bias, we presume a trial court's actions were not so tainted. *Brumit*, 206 S.W.3d at 645. To reverse a judgment based on improper comments or conduct by the judge, we must find (1) that judicial impropriety occurred and (2) prejudice probably resulted. *Id.; Luu v. State*, 440 S.W.3d 123, 128-29 (Tex. App.--Houston [14th Dist.] 2013, no pet.). Our review encompasses the entire record. *Luu*, 440 S.W.3d at 129. Remarks by the judge during trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support [*32] a challenge for bias unless they reveal an opinion derived from an extrajudicial source. *Id.* When no extrajudicial source is alleged, such remarks demonstrate bias only if they reveal such a high degree of favoritism or antagonism as to have made fair judgment impossible. *Id.*

We begin by noting that appellant does not cite any place in the record where she made a request, objection, or motion based on the trial judge's alleged bias. *See* Tex. R. App. P. 33.1(a) (requiring a timely request, objection, or motion to preserve a complaint for appellate review). She specifically did not file a motion to recuse the judge or seek a new trial on the basis of bias. Accordingly, we may reverse her conviction on this ground only if we find that such bias resulted in fundamental error. *See Mendez*, 138 S.W.3d at 341-42; *Luu*, 440 S.W.3d at 128. The Court of Criminal Appeals has expressly reserved the question of whether a judge's comments can exhibit bias to such a decree as to constitute fundamental error. *See Brumit*, 206 S.W.3d at 644-45 (declining to decide whether an objection is required to preserve error of this nature and instead holding that the record did not reflect partiality of the trial court); *see also Luu*, 440 S.W.3d at 128 (discussing and following *Brumit*).

Appellant merely asserts in conclusory fashion [*33] that the trial judge demonstrated general bias against DWI defendants and specific bias against her and lists multiple alleged demonstrations of bias with little or no analysis thereof, leaving the court to speculate as to why she perceives the cited occurrences to be objectionable. *See Luu*, 440 S.W.3d at 129 (rejecting contention trial judge demonstrated bias that amounted to fundamental error when appellant "offer[ed] no discussion whatsoever to support his conclusory assertions that the judge was outwardly biased against him"). Our review of the record, including the pages appellant cites, does not reveal obvious bias. Most of appellant's citations are to rulings of the court that appellant does not contend were erroneous. There is certainly no clear expression of bias in the rulings or comments. A few of her citations are to rulings that are the subject of other issues on appeal, including denial of the motion for continuance, refusal to grant a mistrial after a witness mentioned the prior trial, defining reasonable doubt in the jury charge, and refusing to remove the MADD plaque from the courtroom.[10] As discussed elsewhere in this opinion, none of these constitutes error. Continued exhibition of the MADD plaque, [*34] however, requires further analysis for bias.

10 The reasonable doubt definition is addressed in the next section of this opinion.

As our sister court did in *Simpson*, we find the display of the MADD plaque to be analogous to a judge's extra-judicial statements regarding a category of offense or punishment. 2014 Tex. App. LEXIS 6527, 2014 WL 2767126, at *9-10.[11] Courts considering those types of statements have concluded that the mere fact a judge has expressed such views does not, taken alone, demonstrate that the judge acted with bias against a particular defendant in a particular trial. *See Rosas v. State*, 76 S.W.3d 771, 774-75 (Tex. App.--Houston [1st Dist.] 2002, no pet.); *Chastain v. State*, 667 S.W.2d 791, 794 (Tex. App.--Houston [14th Dist.] 1983, writ ref'd) ("It is presumed that a judge will base his judgment upon the facts as they are developed at the trial."). As the *Simpson* court aptly states: "While the display of the plaque could be viewed as evidence the trial judge dislikes drunk driving, it was not a comment on this particular defendant's guilt or innocence and, therefore, did not demonstrate bias against Simpson." 2014 Tex. App. LEXIS 6527, 2014 WL 2767126, at *10. It therefore does not overcome the presumption that the trial judge conducted the trial properly, much less demonstrate fundamental error. *See Brumit*, 206 S.W.3d at 645; *Mendez*, 138 S.W.3d at 341-42; *Simpson*, 2014 Tex. App. LEXIS 6527, 2014 WL 2767126, at *10.

11    As appellant does here, the defendant in *Simpson* made display of the MADD plaque the basis of both an issue concerning possible impact [*35] on the jury as well as an issue complaining of judicial bias. 2014 Tex. App. LEXIS 6527, 2014 WL 2767126, at *5-10.

Lastly, regarding appellant's contention that the trial judge has a policy of rejecting all negotiated agreements in DWI cases that would refer a criminal defendant to the "DIVERT" Program and that this policy demonstrates bias, we have previously held directly to the contrary. This position does not in fact establish the judge has a bias against DWI defendants. *See Rhodes v. State*, 357 S.W.3d 796, 800-01 (Tex. App.--Houston [14th Dist.] 2011, no pet.). Accordingly, we overrule appellant's sixth issue.

## VI. Reasonable Doubt Instruction

In issues seven and eight, appellant contends that the trial court erred in providing the jury with a definition of reasonable doubt and that this error prejudiced her case. The definition in question stated "A 'reasonable doubt' is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case." The trial court overruled appellant's timely objection to the definition. In *Adkins v. State*, we found submission of the same definition in a DWI trial in this same trial court to be error. 418 S.W.3d 856, 863-66 (Tex. App.--Houston [14th Dist.] 2013, pet. ref'd). The State offers no reason, and we discern no reason, for reconsidering that holding in this case.

Having found error in submission of the charge, [*36] we must now analyze that error for harm. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Because appellant properly objected to the definition, we will reverse if the defendant suffered "some harm" to his rights. *See id.*[12] In making this determination, we examine the jury charge as a whole, the state of the evidence, argument by counsel, and any other relevant information revealed in the record. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Adkins*, 418 S.W.3d at 866. The record must show that appellant suffered "actual" not merely "theoretical" harm. *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985); *Adkins*, 418 S.W.3d at 866.

12   Appellant asserts that a failure to properly instruct on reasonable doubt constitutes structural error that requires reversal and is not subject to a harm analysis. However, the only authority she cites for this proposition, *Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993), is readily distinguishable. In *Sullivan*, the

instruction at issue created a presumption of specific intent under the facts of the case. *Id.* at 280-82. Here, the trial court merely included a definition of reasonable doubt that has been described as useless; it did not create a presumption on intent. *Paulson v. State*, 28 S.W.3d 570, 572 (Tex. Crim. App. 2000).

We begin our analysis by noting that the definition submitted by the trial court in this case was the first sentence in paragraph four of the reasonable doubt definition crafted by the Court of Criminal Appeals in *Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991), but subsequently withdrawn [*37] by the Court in *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). The *Paulson* court harshly criticized certain portions of the *Geesa* definition; as to the particular language at issue here, however, *Paulson* simply described it as "useless" and circular. *Paulson*, 28 S.W.3d at 572 (comparing the first sentence of paragraph four to the statement "[a] white horse is a horse that is white."). Thus, it appears that the *Paulson* court viewed the language at issue here as less likely to cause harm than some other parts of the *Geesa* definition. *See Adkins*, 418 S.W.3d at 866-67 (interpreting *Paulson* in this fashion).

Turning to the record in this case, we first observe that the State's case against appellant was strong. The State presented five eyewitnesses at trial, including three police officers and two individual citizens, who each concluded that appellant was intoxicated at the time of her detention. The officers observed her close at hand immediately after her detention, and the citizens observed her while she was driving. The State further presented a tape recording of a third citizen's 9-1-1 call in which he likewise concluded appellant was driving while intoxicated. Each witness recounted specific observations that led them to their conclusion. It was also established that appellant [*38] refused to submit to a breathalyzer test as well as other sobriety tests. *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (explaining that refusal to submit to a breath test is relevant in establishing guilt as it tends to show a consciousness of guilt). Although defense counsel developed a few inconsistencies between the statements and the police reports, and appellant denied the allegations during her testimony, the evidence overall was strongly indicative of guilt. *See, e.g., Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010) (identifying the strength of the State's case as a relevant factor in a harm analysis).

Next, we note that the court's charge appears to have otherwise properly instructed the jury on the burden of proof, the elements of the offense, and the presumption of innocence. *See Adkins*, 418 S.W.3d at 867 (noting propriety of remainder of charge in finding error in defining reasonable doubt harmless). Lastly, we examine

comments made by the judge, prosecutor, and defense counsel in discussing the burden of proof with the jury. Before trial began, the judge offered a somewhat rambling statement regarding the importance of the jury's determination but also stressed that appellant must be presumed innocent and that the State had the burden to prove her guilt beyond a reasonable doubt. [*39] The prosecutor told the venire panel that he had the burden of proof but could not define beyond a reasonable doubt for the jury. He then stated,

> Beyond a reasonable doubt does not mean that I prove this case to you beyond all doubt in the world. It does not mean that I prove it to you one hundred percent, because if I could prove it to you one hundred percent you would have been a witness and I would have called you to the witness stand. It's not an impossible burden to meet.

This soliloquy does not appear to be particularly helpful or particularly damaging to the jury's understanding of the burden of proof. Defense counsel offered more clarity in closing argument, telling jurors that "[r]easonable doubt . . . is the highest burden in the land." He then generally described the preponderance-of-the-evidence and clear-and-convincing burdens of proof and emphasized that beyond a reasonable doubt was an even harder standard to meet.

Considering the charge as a whole, the strength of the State's evidence, and the comments made by counsel and the judge, we find that the trial court's error in defining reasonable doubt in the jury charge did not cause actual harm to appellant's rights. *See Ngo*, 175 S.W.3d at 743. Accordingly, [*40] we overrule appellant's seventh and eighth issues.

## VII. Blood-Alcohol Content

In issue nine, appellant asserts that the trial court's judgment should be modified to remove the notation of a blood-alcohol content level as there was no evidence establishing any such level. Specifically, the description in the judgment of the offense for which appellant was convicted reads "DWI 2ND OFFENDER BAC .08," but no evidence was admitted showing appellant had a specific blood-alcohol content as she refused such testing. The State concedes the propriety of this requested correction.

Under appropriate circumstances, a court of appeals may modify a trial court's judgment to correct an error. Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *see also French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (holding that "an appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth when the matter has been called to its attention by any source"). Accordingly, we modify the trial court's judgment to strike the term "BAC .08" from the offense.

## VIII. Conclusion

We modify the trial court's judgment to remove the notation regarding appellant's blood-alcohol content. Having overruled all of appellant's other issues, we affirm the judgment as so modified. [*41]

/s/ Martha Hill Jamison

Justice

Panel consists of Justices Boyce, Jamison, and Donovan.
Publish -- TEX. R. APP. P. 47.2(b).